KELLUM, Judge.
The State of Alabama has filed four petitions' for' a writ of mandamus. asking this Court to direct the Jefferson Circuit Court to vacate its order declaring Alabama's “capital-sentencing scheme” unconstitutional and barring the State from seeking the death penalty in capital-murder prosecutions. Because these petitions address the same issue, we consolidate them for the purpose of writing a single opinion. We grant the petitions and issue the writs.
Facts and Procedural History
Kenneth Eugene Billups, Stanley Brent Chatman, Terrell Corey McMullin, and Benjamin Todd Acton (hereinafter collectively referred to as “respondents”) were indicted for various counts of capital murder. Billups and Acton were each indicted for. one count of murder made capital because it was committed during the. course of a robbery, see § 13A-5-40(a)(2), Ala. Code 1975,[1] Chatman and McMullin were each indicted for one count of the murder of two or more persons pursuant to one act or one scheme or course of conduct, see § 13A-5-40(a)(10), Ala.Code 1975, for two counts of murder made capital because it was committed during the course of a robbery, see § 13A-5-40(a)(2), Ala. Code 1975, and for two counts of murder made capital because it was committed during the course of a burglary, see § 13A-5-40(a)(4), Ala.Code 1975.[2]
*958 Before trial, the respondents each filed a motion to bar imposition of the death penalty in their cases and to hold Alabama’s capital-sentencing scheme unconstitutional based on the' United States Supreme Court’s recent decision in Hurst v. Florida, 577 U.S. —, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016).[3] The circuit court consolidated the motions and, after conducting a hearing, entered an order in all four cases concluding that “the capital sentencing scheme as provided by the Alabama Criminal Code is unconstitutional and is this day barred from enactment.” (Petitions, Appendix A, p. 28.)
Standard of Review
“Before a writ of mandamus may issue, the petitioner must show (1) a clear legal right in the petitioner to the relief sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) no adequate remedy at law; and (4) the properly invoked jurisdiction of the reviewing court.”
State v. Reynolds, 819 So.2d 72, 79 (Ala.Crim.App.1999). “A writ of mandamus is a drastic and extraordinary writ and will not be issued unless the petitioner has a clear and undisputable right to a particular result.” Ex parte Springer, 619 So.2d 1267, 1268 (Ala.1992). “ ‘A writ of mandamus is not granted unless there is a clear showing of error in the trial court-to the injury of the petitioner.’ ” Ex parte Hutcherson, 847 So.2d 386, 388 (Ala.2002) (quoting Ex parte Southland Bank, 514 So.2d 954, 955 (Ala.1987)).
Analysis
I.
As a threshold matter, we must determine whether mandamus is the proper avenue by which the State can seek review of the circuit court’s order. The State argues that mandamus is appropriate because, it says, it has no other avenue to seek review of the court’s order and the order, which prohibits the State from seeking the death penalty in capital-murder prosecutions, represents “an extraordinary disruption in the administration of criminal justice.” (Petition, p. 19.) The respondents argue, on the other hand, that the State has a right to appeal the circuit court’s ruling pursuant to § 12-22-91, Ala. Code 1975, and that, therefore, mandamus is not appropriate.
Although § 12-22-91 gives the State the right to appeal a lower court’s order holding unconstitutional the statute “under which the indictment or information is preferred,” as the State correctly argues the circuit court in this case did not hold unconstitutional the statute under which the respondents’ indictments were preferred—§ 13A-5-40, Ala.Code 1975. Rather, the circuit court held unconstitutional Alabama’s “capital-sentencing scheme,” i.e., those statutes setting forth the procedures for imposing the death penalty in Alabama, see §§ 13A-5-44 through -52, Ala.Code 1975. “All statutes that authorize appeals are to be strictly construed,” Dixon v. City of Mobile, 859 So.2d 462, 463 (Ala.Crim.App.2003), and “may not be enlarged or extended by judicial construction.” State v. Gautney, 344 So.2d 232, 234 (Ala.Crim.App.1977). Un *959 der the plain language of § 12-22-91, the State could not appeal the circuit court’s order in this case because the circuit court did not hold unconstitutional § 13A-5-40, Ala.Code 1975, the statute under which the indictments were preferred.[4]
This Court “has jurisdiction not only to issue all writs necessary or appropriate in aid of [our] appellate jurisdiction, but also has authority to issue such remedial and original writs as are necessary to give [us] a general superintendence and control of jurisdictions inferior to [us] in criminal matters.” Ex parte Nice, 407 So.2d 874, 877 (Ala.1981). “[I]t is fairly well settled that notwithstanding the fact that the State has a restricted right in criminal cases to prosecute an appeal, the actions of a trial judge as to certain rulings in criminal cases may be reviewed by mandamus proceedings under appropriate circumstances.” Id. at 878. Indeed, “a writ of mandamus is a supervisory order; thus, an appellate court may issue this writ in any situation, within recognized limits, where this writ is necessary to protect the proper judicial administration of the courts.” Ex parte Sullivan, 779 So.2d 1157, 1161 (Ala.2000).
Although generally “[mjanda-mus cannot be used as a substitute for appeal, when no appeal is authorized by law or court rule, [it] can be used to prevent a gross disruption in the administration of criminal justice.” Ex parte Nice, 407 So.2d at 879. Mandamus may also “be used by the government in aid of its lawful rights in the prosecution of criminal cases,” id. at 879, and “in exceptional circumstances which amount to judicial usurpation of power.” Id. at 878. “[0]nly the rarest of circumstances merit an intervention in a criminal case by mandamus; nevertheless, circumstances can arise which present a compelling need for the issuance of the mandamus to further important countervailing public interests.” Id. at 880. These four cases present just the type of rare and exceptional circumstance that merits intervention by mandamus to prevent a gross disruption in the administration of criminal justice. Therefore, mandamus is the appropriate avenue for the State to seek review of the circuit court’s order.
II.
The State contends that the circuit court erred in holding that Hurst v. Florida, 577 U.S. —, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016), rendered Alabama’s capital-sentencing scheme unconstitutional. The State argues that Alabama’s capital-sentencing scheme is constitutional under Hurst because,the statutory scheme requires the jury, not the trial court, to make the findings necessary for imposition of the death penalty, during either the guilt phase or the penalty phase of the trial, and that it has a clear legal right to seek the death penalty in capital-murder prosecutions under Alabama’s statutory scheme. In its order, the circuit court found that “capital defendants in Alabama are subject to having the ‘maximum authorized punishment ... increased by a judge’s own factfinding’ ” and that, therefore, “[i]n light of the ruling in Hurst, Alabama’s capital-sentencing scheme, ‘under which an advisory jury makes a recommendation to a judge, and the judge makes the critical *960 findings needed for the imposition of - a death sentence, violates the Sixth Amendment right to trial by jury.’ ’’ (Petitions, Appendix A, pp. 26-27; citations omitted.)
Initially, we point out that “statutes are presumed to be constitutional,” State v. Adams, 91 So.3d 724, 732 (Ala.Crim.App.2010), and courts “should be very reluctant to hold any act unconstitutional.” Ex parte Boyd, 796 So.2d 1092, 1094 (Ala.2001). In reviewing the constitutionality of a statute, courts ‘“must afford the Legislature the highest degree of deference, and construe its acts as constitutional if their language so permits.’ ” Adams, 91 So.3d at 732 (quoting Monroe v. Harco, Inc., 762 So.2d 828, 831 (Ala.2000)). “ ‘[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to ■ sustain rather ■ than strike down the enactment of a coordinate branch of government.’” Herring v. State, 100 So.3d 616, 620 (Ala.Crim.App.2011) (quoting Alabama State Fed. of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944)). “It is the duty of a court to sustain an act unless [the court] is convinced- beyond a reasonable doubt of [the act’s] unconstitutionality.” Handley v. City of Montgomery, 401 So.2d 171, 180 (Ala.Crim.App.1981). With respect to Alabama’s capital-sentencing scheme, § 13A-5-58, Ala.Code 1975, specifically directs: “This article shall be interpreted, and if necessary reinterpreted, to be constitutional.”
. Before examining the opinion in Hurst, we first reexamine the opinions on which Hurst was based: Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).[5] In Apprendi, the United States Supreme Court held that, “[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must , be submitted to a jury, and proven beyond a reasonable doubt.” 530 U.S. at 490 (emphasis added). The Court stated that pursuant to the Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, “it is unconstitutional for a legislature to remove from the jury the ■ assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.” Id. (quoting Jones v. United States, 526 U.S. 227, 252, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) (Stevens, J,, concurring)). In determining whether a sentencing statute is constitutional in this respect, the Court said, “the relevant inquiry is one not of form but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury’s guilty verdict? ” Id. at 494 (emphasis added). The Court noted, however, that it is permissible “for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing judgment within the range prescribed by statute” and that “judges 'in this country have long exercised discretion of this nature in imposing sentence within statutory limits in the individual case.” Id. at 481 (emphasis in original).
In Ring, the United States Supreme Court applied its holding in Apprendi to *961 capital sentencing and held Arizona’s capital-sentencing scheme unconstitutional. Under Arizona’s capital-sentencing scheme as it then existed,[6] the maximum sentence authorized by a jury verdict finding a defendant guilty of first-degree murder was life imprisonment without the possibility of parole; the defendant became eligible for the death penalty only if the trial court, sitting without a jury, found the existence of an aggravating circumstance and found that there were no mitigating circumstances sufficiently substantial to call for leniency. The Court held that “[cjapital defendants, no less than noncapital defendants, ... are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment.” 536 U.S. at 589 (emphasis added). The Court reiterated the principle from Apprendi that “[a] defendant may not be ‘exposefd’J ... to a penalty exceeding the maximum he tyould receive if punished according to the- facts reflected in the jury verdict alone.’ ” Ring, 536 U.S. at 602 (quoting Apprendi, 530 U.S. at 483 (some emphasis added)). Because a sentence of death exceeded the maximum punishment authorized for a conviction of first-degree murder in Arizona, the Court concluded, the fact necessary to expose a defendant to the death penalty—-the existence of an aggravating circumstance— must be found by a jury. The Court in Ring overruled its previous opinion in Walton v. Arizona, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), upholding as constitutional Arizona’s capital-sentencing scheme “to the extent that it allows- a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty.” Ring, 536 U.S. at 609 (emphasis added).
In Hurst, the United States Supreme Court held Florida’s capital-sentencing scheme unconstitutional. The Court noted that “[t]he analysis the Ring Court applied to Arizona’s sentencing scheme applies equally to Florida’s.” Hurst, 577 U.S. at —, 136 S.Ct. at 621-22. Florida’s capital-sentencing scheme as it then existed[7] was similar to Arizona’s in that the maximum sentence authorized by a jury verdict finding a defendant guilty of first-degree murder was life imprisonment without the. possibility of parole; the defendant became eligible for the death penalty only if the trial court found the existence of an aggravating circumstance and found that there were insufficient mitigating circumstances to outweigh the aggravating circumstances. Although Florida’s procedure, unlike Arizona’s, included an advisory verdict by a jury recommending a sentence, the Court found this distinction “immaterial” because a Florida jury "‘does not make specific factual findings with regard to the existence of mitigating or aggravating circumstances and its recommendation is not binding on the trial judget; therefore, a] Florida trial court no more has the assistance of a jury’s findings of fact with respect to sentencing issues than does a trial judge in Arizona.’ ” Hurst, 577 U.S. at —, 136 S.Ct. at 622 (quoting Walton, 497 U.S. at 648. The Court reiterated that “any fact that ‘expose[s] the defendant to a greater punishment than that authorized by the jury’s guilty verdict’ .,. must be submitted to a jury,” Hurst, 577 U.S. at —, 136 S.Ct. at 621 (emphasis added), and concluded that Florida’s procedure was unconstitutional because “the Florida sentencing *962 statute does not make a defendant eligible for death until ‘findings by the court that such person shall be punished by death,’ ” Hurst, 577 U.S. at —, 136 S.Ct. at 622 (quoting former Fla. Stat. § 785.082(l)(a)); “[t]he trial court alone must find ‘the facts ... [t]hat sufficient aggravating circumstances exist’ and ‘[tjhat there are insufficient mitigating circumstances to outweigh the aggravating circumstances.’” Hurst, 577 U.S. at —, 136 S.Ct. at 622 (quoting former Fla. Stat. § 921,141(3).) As in Ring, in which the Court overruled its previous decision in Walton upholding Arizona’s capital-sentencing scheme, the Court in Hurst overruled its previous decisions in Hildwin v. Florida, 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989), and Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984), upholding as constitutional Florida’s capital-sentencing scheme to the extent “they allow a sentencing judge to find an aggravating circumstance, independent of a .jury’s fact-finding, that is necessary for imposition of the death penalty.” Hurst, 577 U.S. at —, 136 S.Ct. at 624 (emphasis added).
We first point out what the Supreme Court in Hurst did not hold: The Court in Hurst did not hold, as the respondents argue, that judicial override of a jury’s capital-sentencing recommendation is unconstitutional. The issue of judicial override was not even before the Court when it decided Hurst because the trial court in Hurst did not override the jury’s sentencing recommendation; the trial court in Hurst followed the jury’s recommendation of death. The Court in Hurst also did not hold, as the respondents argue, that judicial sentencing in capital cases is unconstitutional or that it is unconstitutional to allow a trial court, in determining the appropriate. sentence in a capital case, to consider evidence that was not presented to the jury. Although the Court in Hurst found that a jury’s capital-sentencing recommendation alone was not sufficient to establish that the jury found the facts necessary for imposition of the death penalty under Florida’s capital-sentencing scheme, the Court did not state, or even imply, that it is constitutionally required that a jury, and not a judge, make the ultimate decision whether to sentence a defendant to death or to life imprisonment without the possibility of parole. Indeed, in reaching its decision in Hurst, the Court relied on its holdings in Apprendi and Ring, and, as noted above, the Court in Apprendi specifically found that it was permissible “for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing judgment within the range prescribed by statute.” Apprendi, 530 U.S. at 481.
Simply put, the Court in Hurst did not, as the respondents argue, hold unconstitutional the broad overall structure of Florida’s capital-sentencing scheme—a hybrid scheme beginning with a bifurcated capital trial during which the jury first determines whether the defendant is guilty of the capital offense and then recommends a sentence, followed by the trial court making the ultimate decision as to the appropriate sentence. Rather, the Court held that Florida’s capital-sentencing scheme was unconstitutional to the extent that it specifically conditioned a capital defendant’s eligibility for the death penalty on findings made by the trial court and not on findings made by the jury, which contravened the holding in Ring. The Court emphasized several times in its opinion that Florida’s capital-sentencing statutes did not make a capital defendant eligible for the death penalty until the trial court made certain findings. See Former Fla. Stat. § 775.082(l)(a) (2010) (“[A] person who has been convicted of a capital felony shall be punished by death” only “if the *963 proceeding held to determine sentence according to the procedure set forth in § 921.141 results in findings by the court that such person shall be punished by death, otherwise such person shall be punished by life imprisonment and shall be ineligible for parole.” (emphasis added)). And the Court held only that “Florida’s sentencing scheme, which required the judge alone to find the existence of an aggravating circumstance, is therefore unconstitutional.” Hurst, 577 U.S. at —, 136 S.Ct. at 624.
The Court in Hurst did nothing more than apply its previous holdings in Apprendi and Ring to Florida’s capital-sentencing scheme. The Court did not announce a new rule of constitutional law, nor did it expand its holdings in Apprendi and Ring. As the State correctly argues, “Hurst did not add anything of substance to Ring.” (Petitions, p. 6.) The Alabama Supreme Court has repeatedly construed Alabama’s capital-sentencing scheme as constitutional under Ring. See, e.g., Ex parte Waldrop, 859 So.2d 1181 (Ala.2002); Ex parte Hodges, 856 So.2d 936 (Ala.2003); Ex parte Martin, 931 So.2d 759 (Ala.2004); Ex parte McNabb, 887 So.2d 998 (Ala. 2004); and Ex parte McGriff, 908 So.2d 1024 (Ala.2004). For the reasons explained below, these authorities establish that Alabama’s capital-sentencing scheme is constitutional under Apprendi, Ring,' and Hurst and that the State is entitled to the relief it seeks.
In Alabama, a capital trial is bifurcated into two phases. See § 13A-5-43, Ala. Code 1975. In the first phase of the trial, often referred to as the guilt phase, the jury must determine whether the defendant is guilty of the capital offense with which he or she is charged.[8] See § 13A-5-40(a), Ala.Code 1975 (defining the capital offenses in Alabama). If the jury finds the defendant guilty of the capital offense, the second phase of the trial, delineated by statute as a sentence hearing but often referred to in caselaw as the penalty phase or sentencing phase, begins.[9] At the penalty phase, the parties present to the jury any evidence relevant to sentencing, particularly relating to aggravating circumstances as listed in § 13A-5-49, Ala.Code 1975, and mitigating circumstances as listed in §§ 13A-5-51 and 13A-5-52, Ala. Code 1975. See §§ 13A-5-45 and 13A-5-46, Ala.Code 1975. After hearing the evidence during the penalty phase of the trial, the jury then returns an advisory verdict recommending a sentence of either life imprisonment without the possibility of parole or death. See § 13A-5^6, Ala.Code 1975.
Section 13A-5-46(e) provides specific guidance to the jury in recommending a sentence. If the jury finds that no aggravating circumstance in § 13A-5-49 exists, the jury must recommend a sentence of life imprisonment without the possibility of parole. See § 13A-5-46(e)(l). If the júry unanimously finds that one or more aggravating circumstances in § 13A-5-49 exist, but finds that they do not outweigh any mitigating circumstances in § 13A-5-51 and § 13A-5-52, the jury must recommend a sentence of life imprisonment without the possibility of'parole. See § 13A-5-46(e)(2). If the jury unanimously finds that one ■ or more aggravating circum *964 stances exist and finds that they outweigh any mitigating circumstances, the jury must recommend a sentence of death. See § 13A-5-46(e)(2).[10]
After the jury makes its sentencing recommendation, the trial court “shall proceed to determine the sentence.” § 13A-6-47(a), Ala.Code 1975. In determining the appropriate sentence in a capital case, the trial court must order a presentence-investigation report, see § 13A-5-47(b); must conduct another sentencing hearing before.the trial court alone, see § 13A-5-47(c); must issue a sentencing order containing “specific written findings concerning thé existence or nonexistence of each aggravating circumstance enumerated in Section 13A-5-49, each mitigating circumstance enumerated in Section 13A-5-51, and any additional mitigating circumstances offered pursuant to Section 13A-5-52 ... [and] summarizing the crime and the defendant’s participation in it,” § 13A-5-47(d); and must “determine whether the aggravating circumstances it finds to exist outweigh the mitigating circumstances it finds to exist, and in doing so .., [must] consider the recommendation of the jury contained in its advisory verdict.” § 13A-5-47(e).
A jury’s advisory verdict recommending a sentence of life imprisonment without the possibility of parole pursuant to § 13A-5-46(e)(l) based on the juryes finding that no aggravating circumstance' exists is binding on the trial court. See Ex parte McGriff, 908 So.2d at 1038 (“Section •13A-5-46(e)(l) reads: ‘If the jury determines that no aggravating circumstances as defined in Section 13A-5-49 exist, it shall return an advisory verdict recommending to the trial court that the penalty be life imprisonment'without parole.’ Ring requires that this subsection be applied in these terms: If the jury determines that no aggravating circumstance as defined in § 13A-5-49 exists, the jury must return a verdict, binding on the trial court, assessing the penalty of life imprisonment without parole;”). A jury’s advisory verdict recommending a sentence of life imprisonment without the possibility of .parole pursuant- to § 13A-5-46(e)(2) based on the jury’s findings that one or more aggravating circumstances exist but do not outweigh the mitigating circumstances, is not binding'on the trial court, *965 but the trial court, in determining the appropriate sentence, must treat the jury’s recommendation as a mitigating circumstance. See Ex parte Carroll, 852 So.2d 833, 836 (Ala.2002). A jury’s advisory verdict recommending a sentence .of death pursuant to § 13A-5-46(e)(3) is not binding on the trial court.
Section 13A-5-45(f) provides that “[u]n-less at least one aggravating circumstance as defined in Section 13A-5-49 exists, the sentence shall be life imprisonment without parole.” Section 13A-5-45(e) further provides:
“At the sentence hearing the state shall have the burden of proving beyond a reasonable doubt the existence of any aggravating circumstances. Provided, however, any aggravating circumstance which the verdict convicting the defendant establishes was proven beyond a reasonable doubt at trial shall be considered as proven beyond a reasonable doubt for purposes of the sentence hearing.”
Under these provisions, a capital defendant in Alabama is not eligible for the death penalty unless at least one of the aggravating circumstances in § 13A-5-49 exists. Since Ring was decided, the Alabama Supreme Court has interpreted these provisions as requiring that the jury unanimously find beyond a reasonable doubt the existence of an aggravating circumstance in § 13A-5-49 before a capital defendant is eligible for the death penalty. See Ex parte McGriff, 908 So.2d at 1037-38; Ex parte McNabb, 887 So.2d at 1005; and Ex parte Waldrop, 859 So.2d at 1187-90. Alabama’s capital-sentencing scheme, as interpreted by the Alabama Supreme Court in light of Ring, “forecloses the. trial court from imposing a death sentence unless the jury has unanimously found beyond a reasonable doubt the existence of at least one § 13A-5-49 aggravating circumstance.” Ex parte McGriff, 908 So.2d at 1037 (emphasis added). Thus, contrary to the circuit court’s conclusion in its order that “capital defendants in Alabama are subject to having the maximum authorized punishment ... increased by a judge’s own factfinding,” it is the jury, not the trial court, that makes the finding of an aggravating circumstance “that is necessary for imposition of the death penalty.” Hurst, 577 U.S. at —, 136 S.Ct. at 624.[11]
It is important here to distinguish between whether a capital defendant is eligible for the death penalty, and whether the death penalty is an appropriate sentence for a capital defendant who is eligible for the death penalty. Ring and Hurst require that any factual finding that exposes a defendant to, or makes a defendant eligible for, a sentence of death must be proven to a jury beyond a reasonable doubt. However, once the jury unanimously finds the fact or facts that expose a defendant to imposition of the death penalty, Ring and Hurst have no further application, and a trial court may then “exercise discretion— taking into consideration various factors relating both to offense and offender—in imposing ... sentence within statutory limits in the individual case.” Apprendi, 530 U.S. at 481 (emphasis omitted).
As already noted, “Alabama law requires the existence of only one aggrava *966 ting circumstance in order for a defendant to be sentenced to death” and that aggravating circumstance must be unanimously found by a jury to exist beyond a reasonable doubt before a capital defendant is eligible for the death penalty. Ex parte Waldrop, 859 So.2d at 1190. Once the jury makes the required finding that an aggravating circumstance exists, the trial court must then exercise its discretion in determining the appropriate sentence. Pursuant to §§ 13A-5-47(d) and (e), the trial court must make findings of fact regarding the existence and nonexistence of aggravating circumstances and mitigating circumstances and determine whether the aggravating circumstance or circumstances the court finds to exist outweigh the mitigating circumstance or circumstances the court finds to exist. However, the trial court’s findings are not, as the circuit court found and the respondents argue, the findings required under Alabama law to render a defendant eligible for the death penalty. Rather, the findings required by § 13A-5-47(d) and (e) are to guide the trial court in determining the appropriate sentence for a capital defendant who is already eligible for the death penalty by virtue of the jury’s finding that an aggravating circumstance exists and to assist this Court in its review of a death sentence.
The respondents’ argument that a capital defendant in Alabama is not eligible for the death penalty unless the trial court finds that the aggravating circumstances outweigh the mitigating circumstances is simply incorrect under Alabama law. As already explained, the only finding necessary to render a capital defendant eligible for the death penalty in Alabama is the existence of an aggravating circumstance, which must be unanimously found by the jury. Whether the aggravating circumstances outweigh the mitigating circumstances is not a finding of fact necessary to make a capital defendant eligible for the death penalty but is a “moral or legal judgment” guiding the trial court’s discretion in determining “ ‘whether a defendant eligible for the death penalty should in fact receive that sentence.’ ” Ex parte Waldrop, 859 So.2d at 1189 (quoting Tuilaepa v. California, 512 U.S. 967, 972, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994)). Additionally, nothing in Apprendi, Ring, or Hurst prohibits a trial court from finding the existence of additional aggravating circumstances beyond the circumstance or circumstances the jury finds to exist. Because Alabama law requires the existence of only one aggravating circumstance in § 13A-5-49 for imposition of the death penalty, once the jury finds the existence of one aggravating circumstance, a capital defendant is then exposed to, or eligible for, the death penalty, and the trial court’s finding of any additional aggravating circumstances “has application only in weighing the mitigating and the aggravating circumstances” to determine the appropriate sentence. Ex parte Waldrop, 859 So.2d at 1190.
Under Apprendi, Ring, and Hurst, the crucial question is—does the required finding that an aggravating circumstance exists expose the defendant to a greater punishment than that authorized by the jury’s guilty verdict alone? In Alabama, unlike Arizona and Florida, the answer to that question depends on the capital offense at issue. The Alabama legislature has chosen in some cases to have the jury make the finding that an aggravating circumstance exists during the guilt phase of the trial and has chosen in some cases to have the jury make that finding during the penalty phase of the trial.[12]
*967 “Many capital offenses listed in Ala. Code 1975, § 13A-5-40, include conduct that clearly corresponds to certain aggravating circumstances found in § 13A-5-49.” Ex parte Waldrop, 859 So.2d at 1188. As noted above, “any aggravating circumstance which the verdict convicting the defendant establishes was proven beyond a reasonable doubt at trial shall be considered as proven beyond a reasonable doubt for purposes of the sentence hearing.” § 13A-5-45(e). When the capital offense itself includes as an element one of the aggravating circumstances in § 13A-5-49 (often referred to as “overlap”), the jury will make the finding that an aggravating circumstance necessary for imposition of the death penalty exists during the guilt phase of the trial. In those cases, the maximum sentence a defendant convicted of a capital offense may receive based on the jury’s guilty verdict alone is death, and Apprendi, Ring, and Hurst are satisfied because the jury’s guilt-phase verdict necessarily includes the finding of an aggravating circumstance necessary for imposition of the death penalty.
When the capital offense does not include as an element one of the aggravating circumstances in § 13A-5-49, the maximum sentence a defendant may receive based on the jury’s guilty verdict alone is life imprisonment without the possibility of parole. In those cases (referred to here as “non-overlap” cases), the jury must make the finding that an aggravating circumstance necessary for imposition of the death penalty exists during the penalty phase of the trial. However, Alabama law still requires that the jury unanimously find the existence of an aggravating circumstance before the defendant is eligible for the death penalty. Thus, in non-overlap cases, just as in overlap cases, Appren-di, Ring, and Hurst are satisfied because it is the jury, not the trial court, that must make the finding that an aggravating circumstance necessary for imposition of the death penalty exists, albeit during the penalty phase of the trial instead of the guilt phase.
The only question that arises in non-overlap cases is whether it can be determined, from the jury’s penalty-phase advisory verdict alone, that the jury unanimously found the existence of an aggravating circumstance necessary to make a defendant eligible for the death penalty. In all but one scenario— where the jury unanimously recommends a sentence of life imprisonment without the possibility of parole—a trial court will be able to determine, from the jury’s advisory verdict alone, that the jury unanimously found the existence of an aggravating circumstance. In Alabama, unlike Florida, the jury cannot consider an aggravating circumstance unless the jury unanimously agrees that the particular circumstance exists, and the jury cannot vote on whether to impose the death penalty unless it first unanimously finds the existence of at least one aggravating circumstance.[13] Because the jury cannot *968 vote on whether, to . recommend the death penalty unless it first unanimously finds the existence of the same aggravating circumstance, as long as at least one juror votes for the death penalty, the jury’s advisory verdict, regardless of what sentence it recommends,[14] necessarily establishes that the jury unanimously agreed that the same aggravating circumstance existed and then proceeded to the next step in the process to weigh the aggravating circumstance and the mitigating circumstance or circumstances and vote on whether to recommend the death penalty. See Ex parte McNabb, 887 So.2d at 1004-06 (holding that the jury’s advisory verdict recommending a sentence of death, even though not unanimous, established that the jury had unanimously found the existence of an aggravating circumstance during the penalty phase of the trial because the trial court had properly instructed the jury that it must unanimously agree that at least one aggravating circumstance existed before it could even consider recommending the death penalty and that it could not consider an any aggravating circumstance to exist unless the jury unanimously agreed that that particular circumstance existed); Jackson v. State, 169 So.3d 1, 96-97 (Ala.Crim.App.2010) (opinion on return to remand) , (holding that the jury’s . advisory- verdict recommending a sentence of life imprisonment without the possibility of parole by. a vote of 10-2 established that the jury had unanimously found the existence of an aggravating circumstance because the trial court had properly instructed the jury that it must unanimously agree on the existence of an aggravating circumstance before it could even consider recommending the death penalty). “The fact that the jury’s deliberations yielded a vote whether to impose the death penalty—where the jury .had been instructed that it could not proceed to a vote unless it first unanimously found the existence .of at least one aggravating circumstance—establishes that the jury unanimously found that at least one aggravating circumstance' existed.” Moody v. State, 888 So.2d 532, 601-02 (Ala.Crim.App.2003). It is “the feet of the jury’s vote,- -rather- than the actual vote tally following the jury’s weighing process, [that], is the , telling⅛ circumstance.” Id. at 602. •
■ This, we believe, was one of the constitutional- defects in Florida’s capital-sentencing scheme. In Florida, the jury did not have to unanimously find the existence of an aggravating-circumstance before the *969 jury could vote on whether to recommend a sentence of death or even before the jury recommended death; only the jurors who voted for death had to find the existence of an aggravating circumstance, and even the jurors who voted for death did not have to unanimously agree on which aggravating circumstance existed. See Steele v. State, 921 So.2d 538, 545 (Fla. 2005) (“Under the law, ... the jury may recommend a sentence of death so long as a majority concludes that at least one aggravating circumstance exists [and nothing in the statute, the standard jury instructions, or the standard verdict form ... requires a majority of the jury to agree on which aggravating circumstances exist.” (emphasis added)). Under Florida law, then, the jury’s verdict in Hurst recommending a sentence of death by a vote of 7-5 established only that 7 members of the jury found that 1 of the 2 aggravating circumstances the State had relied on in seeking the death penalty existed. It did not signify that all 12 jurors unanimously found the existence of the same aggravating circumstance. Therefore, the United States Supreme Court rejected Florida’s argument in Hurst that the jury’s verdict recommending a sentence of death established that the jury had found the existence of an aggravating circumstance beyond a reasonable doubt, noting that “[t]he State cannot now treat the advisory recommendation by the jury as the necessary factual finding that Ring requires.” 577 U.S. at —, 136 S.Ct. at 622. In Alabama, unlike Florida, the jury must unanimously agree that an aggravating circumstance exists and must unanimously agree on which aggravating circumstance exists before the jury can even consider whether to recommend the death penalty. Thus, unlike Florida, a jury’s capital-sentencing recommendation that includes at least one vote for death establishes that all 12 jurors unanimously found the existence of the same aggravating circumstance.
However, if the jury returns a verdict unanimously recommending a sentence of life imprisonment without the possibility of parole, it will be impossible, to know whether that verdict was based on the jury’s finding that no aggravating circumstance existed (in which case, the defendant would not be eligible for the death penalty and the jury’s advisory verdict would be binding on the trial court) or was based on the jury’s finding that at least one aggravating circumstance existed but that the aggravating circumstance did not outweigh the mitigating circumstance or circumstances (in which case, the defendant would be eligible for the death penal: ty and the jury’s advisory verdict would not be binding on the trial court). In that scenario, the trial court would be left in the position of having to guess whether the defendant is eligible for the death penalty, Although neither this Court nor the Alabama Supreme Court would presume that a trial court would impose the death penalty based on guesswork, to avoid having trial courts placed in such an untenable position, the Alabama Supreme Court in Ex parte McGriff endorsed the use of special-verdict forms during the penalty phase of a capital trial in non-overlap cases so that “the count of the jurors’ votes on the issue of the existence of an aggravating circumstance be expressly recorded on the verdict form.” 908 So.2d at 1039. The Court in Ex parte McGriff also emphasized that the jury be properly instructed on unanimity with respect to the existence of an aggravating circumstance, and, because of the critical and central role the jury plays under Alabama’s capital-sentencing scheme—as the body that makes the factual finding necessary to render a capital defendant eligible for the death penalty— that the jury not “be told that its decision on the issue of whether the proffered ag *970 gravating circumstance exists is ‘advisory' or ‘recommending.’”[15] Ex parte McGriff, 908 So.2d at 1038.
In sum, under Alabama’s capital-sentencing scheme, a capital defendant is not eligible for the death penalty unless the jury unanimously finds beyond a reasonable doubt, either during the guilt phase or during the penalty phase of the trial, that at least one of the aggravating circumstances in § 13A-5-49 exists. Unlike both Arizona and Florida, which conditioned a first-degree-murder defendant’s eligibility for the death penalty on a finding by the trial court that an aggravating circumstance existed, Alabama law conditions a capital defendant’s eligibility for the death penalty on a finding by the jury that at least one aggravating circumstance exists. If the jury does not unanimously find the existence of at least one aggravating circumstance, the trial court is foreclosed from sentencing a capital defendant to death. If the jury unanimously finds that at least one' aggravating circumstance does exist, then the trial court must proceed to determine the appropriate sentence. Although the trial court in Alabama must also make findings of fact regarding the existence or nonexistence of aggravating circumstances, the trial court’s findings are not the -findings that render a capital defendant eligible for the death penalty, as was the case in Ring and Hurst. Under Alabama law, only a jury’s finding that an aggravating circumstance exists will expose a capital defendant to -the death penalty.
Alabama’s capital-sentencing scheme, unlike the schemes held unconstitutional in Ring and Hurst, does not “allow a sentencing judge to find an aggravating cireum-stance, independent of a jury’s factfinding, that is necessary for imposition of the death penalty.” Hurst, 577 U.S. at —, 136 S.Ct. at 624; accord Ring, 536 U.S. at 609. Because in Alabama it is the jury, not the trial court, that makes the critical finding necessary for imposition of the death penalty, Alabama’s capital-sentencing scheme is constitutional under Appren Ring, and Hurst.
With respect to the particular cases currently before this Court, all four cases are overlap cases—each respondent was indicted for one or more capital offenses that has as an element of the offense itself one of the aggravating circumstances in § 13A-5-49. If the respondents are found guilty by a jury of the capital offense or offenses with which they are charged, the jury’s guilty verdict will necessarily include a unanimous finding by the jury that an aggravating circumstance exists and that finding by the jury at the guilt-phase of the trial will make the respondents eligible for the death penalty. Therefore, in these four cases, Apprendi, Ring, and Hurst will be satisfied by virtue of the jury’s guilt-phase verdicts.
Conclusion
Alabama’s capital-sentencing scheme is constitutional under Apprendi, Ring, and Hurst, and the circuit court erred in holding otherwise and prohibiting the State from seeking the death penalty in capital-murder prosecutions. The State has established the prerequisites for mandamus to issue. Therefore, the circuit court is directed to set aside its order holding Alabama’s capital-sentencing scheme unconstitutional and to allow the State to seek the death penalty in capital-murder prosecutions if it chooses to do so.
*971 CR-15-0619—PETITION GRANTED; WRIT ISSUED.
CR-15-0622—PETITION GRANTED; WRIT ISSUED.
CR-15-0623—PETITION GRANTED; WRIT ISSUED.
CR-15-0624—PETITION GRANTED; WRIT ISSUED.
WTNDOM, P.J., and WELCH, J., concur. JOINER, J., concurs in part and concurs in the result, with opinion. BURKE J., concurs in the result, with opinion.

. The charges against Billups and Acton are based on unrelated offenses.

. The charges against Chatman and McMullin are based on the same murders.

. In 2006, Billups was convicted of capital murder as charged in his indictment and was sentenced to death. This Court affirmed Bill-ups’s conviction and sentence on direct appeal, but the Alabama Supreme Court reversed this Court’s judgment and remanded the cause for a new trial. See Billups v. State, 86 So.3d 1032 (Ala.Crim.App.2009), rev'd, 86 So.3d 1079 (Ala.2010), after remand, 86 So.3d 1087 (Ala.Crim.App.2011). Billups filed his motion before his retrial.

. We note that Rule 15.7(a), Ala. R.Crim. P., permits the State to appeal a lower court's order suppressing evidence, dismissing an indictment, or quashing an arrest or search warrant; that § 12-12-70(c), Ala.Code 1975, permits the State to appeal a district court's order holding a statute or ordinance invalid; and that § 12-22-90(b), Ala.Code 1975, permits the State to appeal an adverse ruling on a petition for a writ of habeas corpus. These cases do not fall into any of those categories.

. Although both this Court and the Alabama Supreme Court have already exhaustively examined both Apprendi and Ring, it is important that we do so again here to understand the context in which Hurst was decided.

. Arizona amended its- capital-sentencing scheme after Ring was decided.

. Florida - amended its capital-sentencing scheme after Hurst was decided.

. Even when the defendant pleads guilty to a capital offense, the State must prove the defendant’s guilt to a jury beyond a reasonable doubt if it is seeking the death penalty. § 13A-5-42, Ala.Code 1975.

. If a jury finds the defendant not guilty of the capital offense, or if the defendant waives his right to jury participation in sentencing, the jury portion of the proceedings end. See §§ 13A-5-43(b), 13A-5-43(c) and 13A-5-44(c), Ala.Code 1975.

. Section 13A—5—45(g), Ala.Code 197S, provides: "The defendant shall be allowed to offer any mitigating circumstance defined in Sections 13A-5-51 and 13A-5-52. When the factual existence of an offered mitigating circumstance is in dispute, the defendant shall have the burden of interjecting the issue, but once it is interjected the state shall have the burden of disproving the factual existence of that circumstance by a preponderance of the ■ evidence.” The jury need not unanimously agree on the existence of mitigating circumstances. See, e.g., Scott v. State, 163 So.3d 389, 458-59 (Ala.Crim.App.2012). The jury must unanimously agree only on the existence of an aggravating circumstance. Once the jury unanimously finds the existence of an aggravating circumstance, each juror must then individually determine whether or not he or she believes any mitigating circumstances exist and whether the aggravating circumstance the jury has unanimously found t.o exist outweighs the mitigating circumstance or circumstances that juror has found to exist. If a juror concludes that the aggravating circumstance that the jury, has unanimously found to exist outweighs the mitigating circumstance . or circumstances that juror has found to exist, that juror should voté to recommend the death penalty. If, on the other hand, a juror concludes that the aggravating circumstance that the jury has unanimously found to exist does not outweigh the mitigating circumstance or circumstances that juror has found to exist, the juror' should vote to recommend a sentence of life imprisonment without the possibility of parole. The number of jurors who voted for the death penalty, and the number of jurors who voted for life imprisonment without the possibility of parole is reflected on the penalty-phase verdict form.

, Notably, after Ring was decided, the Florida Supreme Court declined to address the impact Ring had on Florida's capital-sentencing scheme, holding instead that Ring did not apply to Florida. See, e.g., Bottoson v. Moore, 833 So.2d 693 (Fla.2002), abrogated by Hurst, supra. In contrast, the Alabama Supreme Court, in the above-cited cases, held that Ring applied in Alabama and addressed the impact of Ring on Alabama's capital-sentencing scheme.

. The United States Supreme Court in neither Ring nor Hurst expressed any opinion as *967 to when, during a bifurcated capital trial, the finding of an aggravating circumstance necessary to make a capital defendant eligible for the death penalty must be made, only that it must be made by a jury. In his special concurrence in Ring, the late Justice Scalia noted: "Those States that leave the ultimate life- or-death decision to the judge may continue to do so—by requiring a prior jury finding of [an] aggravating factor in the sentencing phase or, more simply, by placing the aggravating-factor determination (where it logically belongs anyway) in the guilt phase." 536 U.S. at 612-613 (Scalia, J., concurring specially) (emphasis added). The Alabama legislature has chosen a combination of the two approaches.

. The Proposed Pattern Jury Instructions for Use in the Sentence Stage of Capital Cases Tried Under Act No. 81-178 include unanimity instructions. See also Moody v. State, 888 *968 So.2d 532, 601 (Ala.Crim.App.2003), in which this Court quoted with approval particularly clear and concise' unanimity instructions that included not only the pattern instructions, but additional language regarding unanimity.

. Section 13A-5-46(f) provides;
“The decision of the jury to return an advisory verdict recommending a sentence of life imprisonment without parole must be based on a vote of a majority of the jurors. The decision of the jury to recommend a sentence of death must be based on a vote of at least 10' jurors. The verdict of the jury must be in writing and must specify the vote,” Contrary, to the respondents' argument, neither Ring nor Hurst held that a jury’s advisory verdict recommending a sentence of death must be unanimous." Rather, as already explained, both Ring and Hurst held only that the factual finding necessary to make a capital defendant- eligible for fee death penalty must be unanimously found by a jury. The factual finding necessary to make a capital defendant eligible for • fee death penalty' in Alabama is the existence 'of an aggravating circumstance, not the jury’s advisory verdict. Thus, it is permissible for' a jury feat has unanimously found fee existence of an aggravating circümstance to return a non-unanimous sentencing recommendation.

. This is not to say that a jury cannot be informed that its penalty-phase verdict is advisory or a recommendation. The Court stated only that the jury should not be informed that its factual finding as to the existence .of an aggravating circumstance was advisory or a recommendation because, under Alabama law, it is not.