[Cite as *State v. Mason*, 2016-Ohio-8400.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLANT,             CASE NO.  9-16-34

      v.

MAURICE MASON,                    O P I N I O N

      DEFENDANT-APPELLEE.

Appeal from Marion County Common Pleas Court
Trial Court No. 93CR0153

**Judgment Reversed and Cause Remanded**

**Date of Decision:   December 27, 2016**

APPEARANCES:

    *Brent W. Yager* **for Appellant**

    *Kort Gatterdam and Todd Anderson* **for Appellee**

    *Timothy J. McGinty* **for Amicus Curiae, Cuyahoga County**
          **Prosecutor's Office**

    *Jeffrey M. Gamso* **for Amicus Curiae, Ohio Assoc. of Criminal**
          **Defense Lawyers**

**PRESTON, J.**

{¶1} Plaintiff-appellant, the State of Ohio, appeals the entry of the Marion County Court of Common Pleas granting defendant-appellee's, Maurice Mason ("Mason"), motion to dismiss the death-penalty specification from his indictment. In 1994, Mason was sentenced to death for the 1993 murder of nineteen-year-old Robin Dennis ("Dennis."). *See State v. Mason*, 82 Ohio St.3d 144, 144-148 (1998). In 2008, Mason was granted federal habeas corpus relief as to his death sentence and, while his resentencing was pending, the United States Supreme Court invalidated Florida's death-penalty statute in *Hurst v. Florida.* 577 U.S. ___, 136 S.Ct. 616 (2016). Mason filed a motion to dismiss the death-penalty specification from his indictment arguing that Ohio's death-penalty statue is unconstitutional under *Hurst*. For the reasons that follow, we reverse the trial court's decision granting Mason's motion and declaring unconstitutional Ohio's death-penalty statute in effect in 1993.

{¶2} On September 30, 1993, the Marion County Grand Jury indicted Mason on three counts: Count One of aggravated murder in violation of R.C. 2903.01(B), with a death-penalty specification under R.C. 2941.14 and 2929.04(A)(7) alleging that the murder occurred during the commission of a rape; Count Two of rape in violation of R.C. 2907.02(A)(2), a first-degree felony, with a prior-aggravated-felony specification under R.C. 2941.142; and Count Three of having weapons

while under disability in violation of R.C. 2923.13(A)(2), a fourth-degree felony, with an offense-of-violence specification under R.C. 2941.143. (Doc. No. 1).[1] On December 21, 1993, Mason was re-indicted by the Marion County Grand Jury on the same charges, with a firearm specification under R.C. 2941.141 and 2929.71 added to each count. (Doc. No. 67).

{¶3} After pleading not guilty to the charges in the indictments, the case proceeded to a jury trial on May 31, 1994 through June 18, 1994. (Doc. Nos. 10, 99, 391). On June 18, 1994, the jury found Mason guilty of the charges and specifications in the December 21, 1993 indictment. (Doc. Nos. 340, 341, 342, 391). On June 27, 1994, the trial proceeded to the penalty phase and mitigation evidence was presented in the presence of the jury. (Doc. No. 391). On June 29, 1994, the jury recommended that Mason be sentenced to death under R.C. 2929.03(D)(2) after concluding that the aggravating circumstance of which Mason was convicted outweighed the mitigating factors in the case. (Doc. Nos. 380, 391).

{¶4} On July 7, 1994, the trial court issued its separate opinion accepting the jury's death-sentence recommendation after weighing the aggravating circumstance against the mitigating factors. (Doc. No. 391). That same day, the trial court sentenced Mason to death on Count One, 15-25 years in prison on Count Two, 3-5 years in prison on Count Three, and 3 years in prison on the firearm specification,

---

[1] In 1984, Mason was convicted in Marion County, Ohio of burglary under R.C. 2911.12, a second-degree felony. (Doc. No. 1).

and ordered that Mason serve all of the sentences consecutively. (Doc. Nos. 388, 391). The trial court filed its sentencing entry on July 12, 1994. (Doc. No. 391). After a hearing on August 9, 1994, the trial court denied on August 12, 1994 Mason's motion for a new trial. (Doc. No. 414). Mason filed his notice of appeal on September 6, 1994. (Doc. No. 423). On December 9, 1996, this court affirmed Mason's conviction and sentence, and the trial court's denial of Mason's motion for a new trial. *State v. Mason*, 3d Dist. Marion No. 9-94-45, 1996 WL 715480 (Dec. 9, 1996). *See also State v. Mason*, 3d Dist. Marion No. 9-94-45, 1996 WL 715479 (Dec. 9, 1996) (affirming Mason's death sentence). On June 17, 1998, the Supreme Court of Ohio affirmed Mason's convictions and death sentence. *Mason*, 82 Ohio St.3d 144.

{¶5} Prior to this court's review of Mason's direct appeal, Mason filed a petition for post-conviction relief on September 20, 1996. (Doc. No. 447). The trial court denied Mason's petition on November 21, 1996. (Doc. No. 451). This court affirmed the decision of the trial court on June 6, 1997. *State v. Mason*, 3d Dist. Marion No. 9-96-70, 1997 WL 317431 (June 6, 1997).

{¶6} On July 15, 1999, Mason filed a petition for a writ of habeas corpus in federal court, which was denied by the United States District Court for the Northern District of Ohio on May 9, 2000. *Mason v. Mitchell*, 95 F.Supp.2d 744 (N.D.Ohio 2000). The United States Court of Appeals for the Sixth Circuit affirmed the district

court's denial of Mason's petition but remanded the case for an evidentiary hearing regarding his claim of ineffective assistance of counsel at sentencing. *Mason v. Mitchell*, 320 F.3d 604, 642 (6th Cir.2003). After the evidentiary hearing, the district court on October 31, 2005 denied Mason's ineffective-assistance-of-counsel claim and dismissed his petition. *Mason v. Mitchell*, 396 F.Supp.2d 837 (N.D.Ohio 2005). On October 3, 2008, the Sixth Circuit reversed the district court's decision and granted "a conditional writ of habeas corpus that will result in the vacation of his death sentence unless the state of Ohio commences a new penalty-phase trial against him within 180 days[.]" *Mason v. Mitchell*, 543 F.3d 766 (6th Cir.2008).

**{¶7}** After a number of pleadings in federal court from 2009 to 2013, which extended Mason's resentencing beyond 180 days, the Sixth Circuit concluded that "the State of Ohio is not barred from seeking the death penalty in the new penalty-phase trial against Mason, even though the State failed to recommence the sentencing proceeding within this court's 180-day deadline." *Mason v. Mitchell*, 729 F.3d 545, 548-549, 552 (6th Cir.2013).

**{¶8}** On May 6, 2016, Mason filed a "motion to dismiss capital components pursuant to *Hurst v. Florida*." (Doc. No. 616). On May 17, 2016, the State filed a memorandum in opposition to Mason's motion. (Doc. No. 618). The trial court granted Mason's motion on June 20, 2016. (Doc. No. 619).

{¶9} The State filed its notice of appeal on June 24, 2016. (Doc. No. 620). The State raises two assignments of error. For ease of our discussion, we will address the State's assignments of error together.

**Assignment of Error No. I**

**The trial court erred as a matter of law in failing to apply binding precedent from the Ohio Supreme Court in *State v. Belton*, 2016 Ohio 1581 (April 20, 2016) to reject Mason's claim that the Sixth Amendment requires a jury finding that aggravating circumstances outweigh mitigating factors beyond a reasonable doubt. Trial court decision, Apx. Pgs. 16-19, 43-44.**

**Assignment of Error No. II**

**The trial court erred as a matter of law in concluding that the Sixth Amendment requires jury factfinding in capital sentencing. Trial court decision, Apx. Pgs. 36-40.**

{¶10} In its assignments of error, the State argues that the trial court erred in concluding that the death-penalty specification should be removed from Mason's indictment because Ohio's death-penalty statute is unconstitutional. Specifically, in its first assignment of error, the State argues that the trial court erred by failing to apply *State v. Belton* to reject Mason's constitutional argument. ___ Ohio St.3d ___, 2016-Ohio-1581. In its second assignment of error, the State argues that the trial court erred by concluding that Ohio's death-penalty statute in effect in 1993 is unconstitutional under the Sixth Amendment to the United States Constitution.

{¶11} As an initial matter, we address this court's jurisdiction to address the merits of this appeal. Section 3(B)(2), Article IV of the Ohio Constitution provides

that courts of appeal "shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the court of record inferior to the court of appeals within the district." R.C. 2501.02 defines the jurisdiction of the courts of appeal, "In addition to the original jurisdiction conferred by Section 3 of Article IV, Ohio Constitution, the court shall have jurisdiction upon an appeal upon questions of law to review, affirm, modify, set aside, or reverse judgments or final orders of courts of record inferior to the court of appeals within the district[.]"

{¶12} "Both grants of jurisdiction require that, in order to be appealable, a trial court's order must be final." *State v. Rivera*, 9th Dist. Lorain Nos. 08CA009426 and 08CA009427, 2009-Ohio-1428, ¶ 8. *See also* R.C. 2505.03(A) ("Every final order, judgment, or decree of a court * * * may be reviewed on appeal by a court of common pleas, a court of appeals, or the supreme court, whichever has jurisdiction."). "'"If an order is not final, then an appellate court has no jurisdiction."'" *Rivera* at ¶ 8, quoting *Gehm v. Timberline Post & Frame*, 112 Ohio St.3d 514, 2007-Ohio-607, ¶ 14, quoting *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.*, 44 Ohio St.3d 17, 20 (1989).

{¶13} R.C. 2505.02 describes final orders that may be appealed. Ordinarily, in capital cases, "a final, appealable order consists of both the sentencing opinion * * * and the judgment of conviction." *State v. Ketterer*, 126 Ohio St.3d 448, 2010-

Ohio-3831, ¶ 18. *See also State ex rel. Bates v. Court of Appeals for the Sixth Appellate Dist.*, 130 Ohio St.3d 326, 2011-Ohio-5456, ¶ 20 (discussing the appellate court's jurisdiction to review the capital defendant's appeal of the denial of his constitutional challenge). At least a portion—the death sentence—of Mason's sentence was vacated by the trial court on February 2, 2010 after the Sixth Circuit Court of Appeals concluded that Mason's death sentence was unconstitutional because his trial counsel at his sentencing hearing was ineffective. *See Mason*, 543 F.3d at 784-785; *Mason*, 729 F.3d at 551; (Doc. No. 474). Mason's convictions were affirmed. *See, e.g.*, *Mason*, 729 F.3d at 548. Mason's resentencing is pending.

{¶14} Notwithstanding the requirements of *Ketterer* or R.C. 2505.02, the State may appeal specific orders under R.C. 2945.67. *See State v. Craig*, 116 Ohio St.3d 135, 2007-Ohio-5752, ¶ 13, citing *State v. Hayes*, 25 Ohio St.3d 173 (1986). In particular, R.C. 2945.67(A) provides, in relevant part, "A prosecuting attorney * * * may appeal as a matter of right any decision of a trial court in a criminal case, * * * which decision grants a motion to dismiss all or any part of an indictment * * *."

{¶15} In this case, Mason filed a motion captioned "Defendant's Motion to Dismiss Capital Components pursuant to *Hurst v. Florida*." (Doc. No. 616). In his motion, Mason requests that the trial court "pursuant to *Hurst v. Florida*, * * * dismiss that portion of the aggravated murder indictment in [Mason's] case that

elevates the potential penalty from life imprisonment to death." (*Id.*). In particular, he requests, "Due to the similarities between Florida's capital sentencing laws and Ohio's, Mason submits that pursuant to *Hurst*, this Court should find Ohio's capital sentencing unconstitutional and therefore dismiss the capital components of this case." (*Id.*).

{¶16} The trial court issued its entry, captioned "Ruling on Defendant's Motion to Dismiss Capital Components Pursuant to *Hurst vs. Florida*," addressing Mason's argument "that pursuant to Hurst, [the trial] Court should find Ohio's capital sentencing unconstitutional and therefore dismiss the capital components of [his] case." (Emphasis sic.) (Doc. No. 619). In its entry, the trial court "sustained" Mason's "Motion * * * to Dismiss Capital Components" after concluding that "the Ohio death penalty statute applicable in this Case is unconstitutional for purposes of imposing the death penalty, [and] death may not be imposed as a penalty in this case." (*Id.*). Based on those facts, we conclude that the State appealed an order of the trial court subject to an appeal as of right under R.C. 2945.67(A). That is, we conclude that the State filed an appeal as of right from the trial court's decision granting Mason's motion to dismiss the death-penalty specification of the indictment. *See Craig*, 116 Ohio St.3d 135, 2007-Ohio-5752, at ¶ 13, citing *Hayes*, 25 Ohio St.3d at 175. *But see Rivera*, 2009-Ohio-1428, at ¶ 1, 11, 14-15, 30 (dismissing the State's appeal of the trial court's decision that "the State of Ohio's

method of execution by lethal injection" is unconstitutional for the lack of a final, appealable order because, in part, it was not an order subject to R.C. 2945.67(A), despite that the relief requested by the defendants' was the dismissal of the death-penalty specification from their indictments). Accordingly, we conclude that this appeal is properly before this court.

{¶17} We review de novo a trial court's decision to dismiss all or any part of an indictment based on the constitutionality of the statute under which the defendant is indicted. *See State v. Schwentker*, 11th Dist. Ashtabula No. 2015-A-0012, 2015-Ohio-5526, ¶ 25 (reviewing de novo on the State's appeal as of right under R.C. 2945.67(A) the trial court's decision granting the defendant's motion to dismiss the indictment), citing *State v. Rode*, 11th Dist. Portage No. 2010-P-0015, 2011-Ohio-2455, ¶ 14, citing *State v. Wendel*, 11th Dist. Geauga No. 97-G-2116, 1999 WL 13332193, *2 (Dec. 23, 1999); *State v. Mutter & Mutter*, 4th Dist. Scioto Nos. 15CA3690 and 15CA3691, 2016-Ohio-512, ¶ 19 ("We apply a de novo standard of review to a lower court's ruling on a motion to dismiss an indictment based on double jeopardy."), citing *State v. Trimble*, 4th Dist. Pickaway No. 13CA8, 2013-Ohio-5094, ¶ 5 and *State v. Hill*, 8th Dist. Cuyahoga No. 101633, 2015-Ohio-2389, ¶ 17 ("We review a trial court's judgment on a motion to dismiss an indictment de novo."). *See also State v. Hernon*, 9th Dist. Medina No. 2933-M, 2000 WL 14009, *2 (Dec. 29, 1999) ("The adequacy of an indictment is a question of law, requiring

a de novo review."), citing *State v. Smoot*, 2d Dist. Clark No. 96-CA-107, 1997 WL 432225, *4 (July 18, 1997). We also review de novo the determination of a statute's constitutionality. *State v. Hudson*, 3d Dist. Marion No. 9-12-38, 2013-Ohio-647, ¶ 27, citing *City of Akron v. Callaway*, 162 Ohio App.3d 781, 2005-Ohio-4095, ¶ 23 (9th Dist.) and *Andreyko v. City of Cincinnati*, 153 Ohio App.3d 108, 2003-Ohio-2759, ¶ 11 (1st Dist.). "De novo review is independent, without deference to the lower court's decision." *Id.*, citing *Ohio Bell Tel. Co. v. Pub. Util. Comm. of Ohio*, 64 Ohio St.3d 145, 147 (1992).

{¶18} In his motion to dismiss the death-penalty specification from his indictment, Mason argues that Ohio's death-penalty statute is unconstitutional. In support of his constitutional challenge, Mason relies on *Hurst*, in which the United States Supreme Court concluded that Florida's death penalty statutory scheme violates the Sixth Amendment of the United States Constitution. 136 S.Ct. 616. The trial court agreed with Mason's argument and concluded that the version of Ohio's death-penalty statute in effect in 1993 is unconstitutional under *Hurst*. Specifically, the trial court analyzed:

> The Ohio death penalty statutes in effect at the time of the murder in this case had no provision for the jury making specific findings which would authorize the imposition of the death penalty. Rather, the trial court, and not the jury, is required to make the specific

findings, under former Ohio R.C. 2929.03 (F). Also, the jury's recommendation for a death penalty does not authorize the death penalty; only the trial judge's weighing of the mitigating and aggravating factors, and the trial judge's specific findings, authorize the imposition of the death penalty. For this reason also, the Ohio death penalty statute in effect in February, 1993 is unconstitutional.

(Doc. No. 619).

{¶19} The trial court's analysis is erroneous. In *Hurst*, the United States Supreme Court concluded that Florida's death-penalty statute is unconstitutional under the Sixth Amendment, as applied by the Court in *Apprendi v. New Jersey* and *Ring v. Arizona*, because Florida's death-penalty statute abrogated the jury's fact-finding role. *Hurst* at 617-618. In reaching its conclusion, the United States Supreme Court applied its analysis from *Ring*, in which the Court "held that Arizona's capital sentencing scheme, which allowed a judge to find the facts necessary to sentence a defendant to death, violated the *Apprendi* rule." Kimberly J. Winbush, *Application of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d435 (2000) and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) to State Death Penalty Proceedings*, 110 A.L.R.5th 1 (2003), citing *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428 (2002). *See also Hurst* at 621. The "*Apprendi* rule" states that "any fact that 'expose[s] the defendant to a greater

punishment than that authorized by the jury's guilty verdict' is an 'element' that must be submitted to a jury" under the Sixth Amendment. *Hurst* at 621, quoting *Apprendi v. New Jersey*, 530 U.S. 466, 494, 120 S.Ct. 2348 (2000).

**{¶20}** It appears that the trial court read and applied *Hurst* in a vacuum—namely, the statement, "The Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death. A jury's mere recommendation is not enough." *Id.* at 619. Reading the entirety of *Hurst* reveals that the Florida statutory scheme is substantially different from Ohio's scheme.

**{¶21}** Ohio's death penalty is governed by R.C. 2929.03 and R.C. 2929.04.[2] R.C. 2929.04 provides, in relevant part, "Imposition of the death penalty for aggravated murder is precluded unless one or more of the following is specified in the indictment or count in the indictment pursuant to section 2941.14 of the Revised Code and proved beyond a reasonable doubt." R.C. 2929.04(A) (1981) (current version at R.C. 2929.04(A) (2016)).[3][4] R.C. 2929.03 provides, in relevant part:

> (B)  If the indictment or count in the indictment charging aggravated
>
> murder  contains  one  or  more  specifications  of  aggravating

---

[2] We apply statutes as they existed at the time of the offense. *See, e.g.*, *State v. Sheriff*, 3d Dist. Logan No. 8-11-14, 2012-Ohio-656, ¶ 15, citing *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374. Accordingly, we review the language of Ohio's death-penalty statutes as those statutes existed at the time of the offense in this case—1993.

[3] The language of R.C. 2929.04(A) has not been amended since 1981.

[4] In this case, the indictment included the death-penalty specification identified in R.C. 2929.04(A)(7)—that Mason committed aggravated murder while committing, attempting to commit, or fleeing immediately after committing or attempting to commit rape. (Doc. Nos. 1, 67).

circumstances listed in division (A) of section 2929.04 of the Revised Code, the verdict shall separately state whether the accused is found guilty or not guilty of the principal charge and, if guilty of the principal charge, * * * and whether the offender is guilty or not guilty of each specification. The jury shall be instructed on its duties in this regard, which shall include an instruction that a specification shall be proved beyond a reasonable doubt in order to support a guilty verdict on the specification, but such instruction shall not mention the penalty which may be the consequence of a guilty or not guilty verdict on any charge or specification.

* * *

(D)(1) * * * When death may be imposed as a penalty for aggravated murder, the court shall proceed under this division. * * * The court, and the trial jury if the offender was tried by a jury, shall consider any report prepared pursuant to this division and furnished to it and any evidence raised at trial that is relevant to the aggravating circumstances the offender was found guilty of committing or to any factors in mitigation of the imposition of the sentence of death, shall hear testimony and other evidence that is relevant to the nature and circumstances of the aggravating circumstances the offender was

found guilty of committing, the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, and any other factors in mitigation of the imposition of the sentence of death, and shall hear the statement, if any, of the offender, and the arguments, if any, of counsel for the defense and prosecution, that are relevant to the penalty that should be imposed on the offender. The defendant shall be given great latitude in the presentation of evidence of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code and of any other factors in mitigation of the imposition of the sentence of death. If the offender chooses to make a statement, he is subject to cross-examination only if he consents to make the statement under oath or affirmation.

The defendant shall have the burden of going forward with the evidence of any factors in mitigation of the imposition of the sentence of death. The prosecution shall have the burden of proving, by proof beyond a reasonable doubt, that the aggravating circumstances the defendant was found guilty of committing are sufficient to outweigh the factors in mitigation of the imposition of the sentence of death.

(2) Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of

counsel, and, if applicable, the reports submitted pursuant to division (D)(1) of this section, the trial jury, if the offender was tried by a jury, shall determine whether the aggravating circumstances the offender was found guilty of committing are sufficient to outweigh the mitigating factors present in the case. If the trial jury unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, the trial jury shall recommend to the court that the sentence of death be imposed on the offender. Absent such a finding, the jury shall recommend that the offender be sentenced to life imprisonment with parole eligibility after serving twenty full years of imprisonment or to life imprisonment with parole eligibility after serving thirty full years of imprisonment.

If the trial jury recommends that the offender be sentenced to life imprisonment with parole eligibility after serving twenty full years of imprisonment or to life imprisonment with parole eligibility after serving thirty full years of imprisonment, the court shall impose the sentence recommended by the jury upon the offender. If the trial jury recommends that the sentence of death be imposed upon the offender,

the court shall proceed to impose sentence pursuant to division (D)(3) of this section.

(3) Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the reports submitted to the court pursuant to division (D)(1) of this section, if, after receiving pursuant to division (D)(2) of this section the trial jury's recommendation that the sentence of death be imposed, the court finds, by proof beyond a reasonable doubt, or if the panel of three judges unanimously finds, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, it shall impose sentence of death on the offender. Absent such a finding by the court or panel, the court or the panel shall impose one of the following sentences on the offender:

(a) Life imprisonment with parole eligibility after serving twenty full years of imprisonment;

(b) Life imprisonment with parole eligibility after serving thirty full years of imprisonment.

* * *

(F) The court or the panel of three judges, when it imposes sentence of death, shall state in a separate opinion its specific findings as to the existence of any of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, the existence of any other mitigating factors, the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors.

R.C. 2929.03(B), (D)(1)-(3), (F) (1981) (current version at R.C. 2929.03 (2008)).[5]

{¶22} Plainly, under Ohio's death-penalty statute, a defendant is not eligible for the death penalty unless at least one of the R.C. 2929.04(A) aggravating circumstances is specified in the indictment, and that aggravating circumstance is found by the trier of fact beyond a reasonable doubt. If at least one of the R.C. 2929.04(A) aggravating circumstances is specified in the indictment and that aggravating circumstance is found by the trier of fact beyond a reasonable doubt, the defendant's case proceeds to the penalty phase in which the trier of fact weighs the mitigating evidence presented by the defendant against that aggravating circumstance to determine the penalty that should be imposed on the defendant—a

---

[5] R.C. 2929.03 has been amended a number of times since 1993. The substantive changes to R.C. 2929.03 include revisions to the life-sentence options that may be imposed and the defendant's appellate rights when he or she is sentenced to death—that is, none of those revisions changed the role of the jury or the judge. *See* R.C. 2929.03 (2008).

life-imprisonment sentence or death. R.C. 2929.04(B) (1981) (current version at R.C. 2929.04(B) (2016)); R.C. 2929.03(D)(1), (2) (1981) (current version at R.C. 2929.03(D)(1), (2) (2008)). The burden is on the State to prove beyond a reasonable doubt that the aggravating circumstance sufficiently outweighs the mitigating evidence. R.C. 2929.03(D)(1) (1981) (current version at R.C. 2929.03(D)(1) (2008)).

{¶23} In cases involving a trial by jury, if the jury unanimously finds that the aggravating circumstance outweighs the mitigating factors, then the jury is to recommend that the trial court impose the death penalty. R.C. 2929.03(D)(2) (1981) (current version at R.C. 2929.03(D)(2) (2008)). If the jury finds the opposite, then the jury is to recommend, and the trial court must impose, a life-imprisonment sentence. *Id.* If the jury recommends that a defendant receive the death penalty, the trial court is to consider the "relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable," the presentence-investigation report and weigh the aggravating circumstance of which the defendant was found guilty against the mitigating factors to ensure that the aggravating circumstance outweighs the mitigating factors beyond a reasonable doubt. R.C. 2929.03(D)(2), (3) (1981) (current version at R.C. 2929.03(D)(2), (3) (2008)). If the trial court concludes that the aggravating circumstance does not outweigh the mitigating factors beyond a reasonable doubt, then the trial court may

deviate from the jury's death-penalty recommendation and impose a life-imprisonment sentence. R.C. 2929.03(D)(3), (F) (1981) (current version at R.C. 2929.03(D)(3), (F) (2008)). If the trial court concludes that the aggravating circumstance outweighs the mitigating factors beyond a reasonable doubt, then the trial court is required to issue a separate opinion enumerating the mitigating factors and explaining why those factors do not outweigh the aggravating circumstance. R.C. 2929.03(F) (1981) (current version at R.C. 2929.03(F) (2008)).

{¶24} By contrast, Florida's death penalty statute, in effect at the time *Hurst* was decided, provided that "'[a] person who has been convicted of a capital felony shall be punished by death' only if an additional sentencing proceeding 'results in findings by the court that such person shall be punished by death.'" *Hurst*, 577 U.S. ___, 136 S.Ct. at 620, quoting Fla. Stat. 775.082(1) (2010).[6] "The additional sentencing proceeding Florida employ[ed was] a 'hybrid' proceeding 'in which [a] jury renders an advisory verdict but the judge makes the ultimate sentencing determinations.'" *Id.*, quoting *Ring*, 536 U.S. at 608, fn. 6. "First, the sentencing judge conduct[ed] an evidentiary hearing before a jury." *Id.*, citing Fla. Stat. 921.141(1) (2010). "Next, the jury render[ed] an 'advisory sentence' of life or death without specifying the factual basis of its recommendation." *Id.*, citing Fla. Stat. 921.141(2) (2010). "'Notwithstanding the recommendation of a majority of the

---

[6] Florida amended its statutory scheme in response to *Hurst*. 2016 Fla. Sess. Law Serv. Ch. 2016-13 H.B. 7101 (Mar. 7, 2016).

jury, the court, after weighing the aggravating and mitigating circumstances, [was to] enter a sentence of life imprisonment or death.'" *Id.*, quoting Fla. Stat. 921.141(3) (2010). "If the court impose[d] death, it [was to] 'set forth in writing its findings upon which the sentence of death is based.'" *Id.*, quoting Fla. Stat. 921.141(3) (2010). "Although the judge [was to] give the jury recommendation 'great weight,' the sentencing order [was to] 'reflect the trial judge's independent judgment about the existence of aggravating and mitigating factors.'" (Internal citation omitted.) *Id.*, quoting *Tedder v. State*, 322 So.2d 908, 910 (Fla.1975) and *Blackwelder v. State*, 851 So.2d 650, 653 (Fla.2003).

{¶25} Stated differently, under Florida's scheme, "[t]he trial judge [was] tasked with making independent findings as to the presence of aggravating factors, mitigating factors, and the balance between the two." Guyer, *Ring Around the Jury: Reviewing Florida's Capital Sentencing Framework in Hurst v. Florida*, 11 Duke J.Const.L.&Pub.Policy Sidebar 242 (2016), citing Fla. Stat. 921.141(2), (3) (2010). Although the question of whether there were any aggravating circumstances was presented to the jury, "the judge [could not] possibly know the specifics of the jury's findings and [the judge made] her own findings" because the jury was not required to make an express aggravating-circumstance finding. *Id.* at 251, citing *Ross v. State*, 386 So.2d 1191, 1197 (Fla.1980) and Fla. Stat. 921.141(2), (3) (2010). "As Florida case law notes, 'the trial court [was] required to make independent findings

Case No. 9-16-34

on aggravation, mitigation, and weight[]'; therefore, [t]he jury's recommendation []
ha[d] no identifiable binding effect at the sentencing stage." *Id.*, quoting *Russ v.
State*, 73 So.3d 178, 198 (Fla.2011) and citing *Ring*, 536 U.S. at 587, citing
*Apprendi*, 530 U.S. at 492.

{¶26} Most pertinently in *Hurst*, the United States Supreme Court, in
overruling its past decisions in *Spaziano v. Florida*[7] and *Hildwin v. Florida,*[8] stated,
"The decisions are overruled to the extent they allow a sentencing judge to find an
*aggravating circumstance*, independent of a jury's fact finding, that is necessary for
imposition of the death penalty." (Emphasis added.) *Hurst* at 624. Further, the
United States Supreme Court held,

> The Sixth Amendment protects a defendant's right to an impartial
> jury. This right required Florida to base Timothy Hurst's death
> sentence on a jury's verdict, not a judge's factfinding. Florida's
> sentencing scheme, which required the *judge alone* to find the
> existence of an aggravating circumstance, is therefore
> unconstitutional.

(Emphasis added.) *Id.*

---

[7] In *Spaziano v. Florida*, the United States Supreme Court held that a trial court's imposition of a death sentence after the jury recommended a life sentence did not violate the Eighth Amendment of the United States Constitution. 468 U.S. 447, 104 S.Ct. 3154 (1984).
[8] In *Hildwin v. Florida*, the United States Supreme Court held that the Sixth Amendment of the United States Constitution permitted the trial court to find an aggravating circumstance. 490 U.S. 638, 109 S.Ct. 2055 (1989).

{¶27} Florida's statutory scheme invalidated in *Hurst* differs from Ohio's statutory scheme. The Florida statutory scheme instructed the jury to find the aggravating circumstances during the penalty phase; instructed the jury that it was to find at least one aggravating circumstance to impose death from a list of aggravating circumstances that could apply to the facts of the case; and instructed the jury that death could be imposed by a simple majority vote.[9] Further, nothing in Florida's statute required "a majority of the jury to agree on *which* aggravating circumstances exist[ed]." (Emphasis sic.) *State v. Steele*, 921 So.2d 538, 545 (Fla.2006), *abrogated*, *Hurst*. *See also* Fla. Stat. 921.141(5)(a)-(p) (2010) (enumerating the 16 aggravating circumstances the jury could consider) (current version at Fla. Stat. 921.141(6) (2016).

{¶28} Also different, Florida's statutory scheme permitted the trial judge to conduct a separate sentencing hearing, known as a *Spencer* hearing, to hear and consider evidence not heard by the jury. *See Spencer v. State*, 615 So.2d 688, 690-691 (Fla.1993); *Engle v. State*, 438 So.2d 803, 813 (Fla.1983). In Ohio, there is no separate hearing or opportunity to present any additional evidence—that is, the trial court is not permitted to consider any evidence not presented to the jury. R.C.

---

[9] While the unanimity of the jury was not at issue in *Hurst*, we nonetheless acknowledge that difference from Ohio's statutory scheme in effect in 1993. *Compare* R.C. 2929.03(D)(2) (1981) (current version at R.C. 2929.03(D)(2) (2008)) with Fla. Stat. 921.141(3) (2010) (current version at Fla. Stat. 921.141(3) (2016)). *See also Hurst* at 620 (noting that "[t]he jury recommended death by a vote of 7 to 5" for Hurst); *State v. Belton*, ___ Ohio St.3d ___, 2016-Ohio-1581, ¶ 59 (acknowledging that a defendant cannot be sentenced to death in Ohio unless the jury unanimously recommends the death sentence).

2929.03(D) (1981) (current version at R.C. 2929.03(D) (2008)). Likewise in stark contrast to Ohio's statutory scheme, Florida's death-penalty statute permitted the trial court to impose a death sentence when the jury recommended a life-imprisonment sentence. *See Williams v. State*, 967 So.2d 735, 751 (Fla.2007); *Hurst* at 625 (Alito, J. dissenting), citing *Tedder*, 322 So.2d at 910. Indeed, Florida's statute specifically referred to the jury's sentence as "advisory" and read, "Notwithstanding the recommendation of a majority of the jury * * *." *See* Fla. Stat. 921.141(2), (3) (2010) (current version at Fla. Stat. 921.141(2), (3) (2016)). Under Ohio's death-penalty statute, the jury's aggravating-circumstance finding is binding on the trial judge, and the trial judge cannot expose the defendant to a greater penalty than authorized by the jury verdict. *See State v. Cooey*, 46 Ohio St.3d 20 (1989), paragraph three of the syllabus ("Only the aggravating circumstances related to a given count may be considered in assessing the penalty for that count."), *superseded by constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997); R.C. 2929.03(D)(2) (1981) (current version at R.C. 2929.43(D)(2)(2008)).

{¶29} The stark differences between Ohio's and Florida's death-penalty statutes are outcome-determinative for Mason's challenge to Ohio's death-penalty statute under *Hurst*. *See Hurst* at 624. The trial court in this case ignored the most important feature that renders Ohio's death-penalty statute constitutional under the

Sixth Amendment through *Apprendi*, *Ring*, and *Hurst*—that the jury, not the judge, determines beyond a reasonable doubt the existence of an aggravating circumstance—the feature that subjects a defendant to the possibility of death as a sentence. Accordingly, we hold that the trial court erred in concluding that Ohio's death-penalty statute in effect in 1993 is unconstitutional under *Hurst*.

**{¶30}** Furthermore, not only is the trial court's analysis erroneous, it is inconsistent with Ohio precedent. The trial court attempts to avoid the application of stare decisis by construing as dicta a recent Supreme Court of Ohio decision discussing the application of *Hurst* to Ohio's death-penalty statute. *See Belton*, ___ Ohio St.3d ___, 2016-Ohio-1581, at ¶ 58-61.[10] The trial court distinguished *Belton*:

> It is true, as stated by the Ohio Supreme Court in State v. Belton,
>
> that the determination of guilt of an aggravating circumstance renders
>
> the defendant potentially eligible for a capital sentence.
>
> The Ohio Supreme Court also stated in Belton that because the
>
> determination of guilt of an aggravating circumstance renders the
>
> defendant eligible for a capital sentence, it is not possible to make a
>
> factual finding during the sentencing phase that will expose a

---

[10] On May 2, 2016, Belton filed a motion for reconsideration of the Supreme Court of Ohio's decision requesting, in part, that the Court remand his case to the trial court or allow for additional briefing concerning his constitutional argument relative to *Hurst* because after Belton's appeal was fully briefed, the United States Supreme Court issued its decision in *Hurst*. While the Supreme Court of Ohio addressed *Hurst* in Belton's appeal, Belton contends in his motion for reconsideration that the Supreme Court of Ohio's application of *Hurst* to his argument improperly relies on pre-*Hurst* precedent. The Supreme Court of Ohio denied Belton's motion on November 9, 2016. *State v. Belton*, 197 Ohio St.3d 1990, 2016-Ohio-7681.

defendant to greater punishment. However, this Court respectfully disagrees that the determination of guilt of an aggravated circumstance alone is what renders a defendant eligible for the imposition of a capital sentence. The ultimate eligibility for a capital sentence in Ohio does not occur until the trial judge makes his or her own determination based on the factors contained in former R.C. Section 2929.03(D)(3), that a death sentence is appropriate. Even the jury recommendation for a death sentence, pursuant to former R.C. Section 2929.03(D)(2), does not by itself make a defendant eligible for imosition [sic] of a capital sentence. Again, the jury's determination of guilt of an aggravating circumstance, by itself, only renders the defendant eligible for a maximum sentence of life imprisonment with parole eligibility after serving thirty years of imprisonment on the offender, former R.C. 2929.03(D)(2)(b).

The Ohio Supreme Court also noted that the trial judge cannot impose a sentence of death unless the jury has entered a unanimous verdict for a death sentence. To this statement this Court agrees that the Ohio statute is different from the Florida statute in Hurst in this regard; however, this fact does not save the Ohio death penalty statute from being unconstitutional under the Sixth Amendment of the United

States Constitution as interpreted in <u>Apprendi vs New Jersey</u>, <u>Ring vs Arizona</u> and <u>Hurst vs Florida</u>.

As to the case law cited by the Ohio Supreme Court in Paragraph 60 of the <u>Belton</u> decision, the continued viability of those cases is doubtful given the statements of the United States Supreme Court in <u>Hurst vs Florida</u>.

(Underline sic.)  (Doc. No. 619).

**{¶31}** The trial court is not free to "respectfully disagree" with the Supreme Court of Ohio when the court of superior jurisdiction has clearly spoken on an issue. *See generally Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 1 ("Stare decisis is the bedrock of the American judicial system. Well-reasoned opinions become controlling precedent, thus creating stability and predictability in our legal system."); *State v. Bethel*, 10th Dist. Franklin No. 07AP-810, 2008-Ohio-2697, ¶ 26 ("'Under this principle, we are bound by and must follow the decisions of the Ohio Supreme Court.  To do otherwise would do violence to the doctrine that ours is a government of law, not of men.'"), quoting *Thacker v. Bd. of Trustees of Ohio State Univ.*, 31 Ohio App.3d 17, 23 (10th Dist.1971), *overruled in part on other grounds, sub nom. Schenkolewski v. Cleveland Metroparks Sys.*, 67 Ohio St.2d 31 (1981), paragraph one of the syllabus.

**{¶32}** The Supreme Court of Ohio's discussion of *Hurst* in *Belton* is persuasive if not authoritative. *See State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 143 (12th Dist.) (Ringland, J., concurring in part and dissenting in part). "'Dicta' is defined as '[e]xpressions in court's opinions which go beyond the facts before court and therefore are * * * not binding in subsequent cases as legal precedent.'" *Westfield Ins. Co.* at ¶ 85, quoting *Black's Law Dictionary* 454 (6th Ed.1990). *See also Peters v. Tipton*, 7th Dist. Harrison No. 13HA10, 2015-Ohio-3307, ¶ 6 ("Obiter dictum, dictum and dicta are interchangeable terms defined by the Ohio Supreme Court as '"an incidental and collateral opinion uttered by a judge, and therefore (as not material to his decision or judgment) not binding."'"), quoting *State ex rel. Gordon v. Barthalow*, 150 Ohio St. 499, 505-506 (1948), quoting *Webster's New International Dictionary* (2d Ed.). "Dicta includes statements made by a court in an opinion that are not necessary for the resolution of the issues." *Gissiner v. Cincinnati*, 1st Dist. Hamilton No. C-070536, 2008-Ohio-3161, ¶ 15, citing *Katz v. Enzer*, 29 Ohio App.3d 118, 122 (1st Dist.1985) and *Levy Overall Mfg. Co. v. Crown Overall Mfg. Co.*, 34 Ohio C.D. 762, 763 (1st Dist.1916). Lower courts are generally not bound by dicta; however, "such extraneous statements may still constitute persuasive authority." *Bachus v. Loral Corp.*, 9th Dist. Summit No. 15041, 1991 WL 199906, *2 (Oct. 2, 1991), citing *Lane v. Greene*, 21 Ohio App.

62, 69-70 (4th Dist.1926); *Ecker v. Cincinnati*, 52 Ohio App. 422, 426 (1st Dist.1936).

**{¶33}** In *Belton*, the Supreme Court of Ohio addressed Belton's constitutional challenge to Ohio's death-penalty scheme and held "that when a capital defendant in Ohio elects to waive his or her right to have a jury determine guilt, the Sixth Amendment does not guarantee the defendant a jury at the sentencing phase of trial." *Belton*, ___ Ohio St.3d ___, 2016-Ohio-1581, at ¶ 61. In arriving at that conclusion, the Supreme Court of Ohio plainly stated:

> Ohio's capital-sentencing scheme is unlike the laws at issue in *Ring* and *Hurst*. In Ohio, a capital case does not proceed to the sentencing phase until after the fact-finder has found a defendant guilty of one or more aggravating circumstances. *See* R.C. 2929.03(D); R.C. 2929.04(B) and (C); *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 147. Because the determination of guilt of an aggravating circumstance renders the defendant eligible for a capital sentence, it is not possible to make a factual finding during the sentencing phase that will expose a defendant to greater punishment. Moreover, in Ohio, if a defendant is tried by a jury, then the judge cannot impose a sentence of death unless the jury has entered a unanimous verdict for a death sentence. R.C. 2929.03(D)(2).

Federal and state courts have upheld laws similar to Ohio's, explaining that if a defendant has already been found to be death-penalty eligible, then subsequent weighing processes for sentencing purposes do not implicate *Apprendi* and *Ring*. Weighing is not a fact-finding process subject to the Sixth Amendment, because "[t]hese determinations cannot increase the potential punishment to which a defendant is exposed as a consequence of the eligibility determination." *State v. Gales*, 265 Neb. 598, 628, 658 N.W.2d 604 (2003); *see, e.g.*, *State v. Fry*, 138 N.M. 700, 718, 126 P.3d 516 (2005); *Ortiz v. State*, 869 A.2d 285, 303-305 (Del.2005); *Ritchie v. State*, 809 N.E.2d 258, 268 (Ind.2004). Instead, the weighing process amounts to "a complex moral judgment" about what penalty to impose upon a defendant who is already death-penalty eligible. *United States v. Runyon*, 707 F.3d 475, 515-516 (4th Cir.2013) (citing cases from other federal appeals courts).

*Id.* at ¶ 59-60. The resolution of Belton's constitutional argument turned on the issue of the constitutionality of Ohio's death-penalty statute under *Apprendi* and *Ring*, as the United States Supreme Court applied the law of those cases in *Hurst*. Indeed, the Supreme Court of Ohio's analysis of Belton's constitutional argument

-30-

is, as the State argues, "an exposition of the logical steps taken to reach its ultimate conclusion." (Appellant's Brief at 9).

{¶34} Although *Belton* is distinguishable from Mason's case, the result is still the same.[11] Unlike Mason, "Belton entered a no-contest plea to charges of aggravated robbery and aggravated murder with capital specifications, and a three-judge panel sentenced him to death." *Belton* at ¶ 1. On appeal, Belton argued that capital defendants in Ohio have "a right to a jury trial to determine the existence of any mitigating factors and to determine whether the aggravating circumstance or circumstances to which he would plead guilty outweigh those factors by proof beyond a reasonable doubt" under the Sixth Amendment through *Apprendi* and *Ring*. *Id.* at ¶ 55. Notwithstanding Belton's jury waiver, Mason's argument is substantially similar to Belton's argument—Ohio's death-penalty statute unconstitutionally abrogates the jury's role in the penalty phase.

{¶35} Even if we are to accept as true the trial court's conclusion that the Supreme Court of Ohio's application of *Hurst* in *Belton* is merely dicta, *Belton* is highly persuasive. At the very least, the Supreme Court of Ohio's discussion of *Hurst* in *Belton* "sheds some light on how the majority of our highest court might

---

[11] Although Ohio's death penalty statute was amended between 1993, the time that Mason committed his crimes, and 2008, the time that Belton committed his crimes, those amendments do not impact the applications of *Hurst* to Ohio's death-penalty statute. *Compare* R.C. 2929.03 (1981) *with* R.C. 2929.03 (2008). *Compare* R.C. 2929.04 (1981) *with* R.C. 2929.04 (2002).

rule on" the specific issue presented by this case. *Blankenburg*, 197 Ohio App.3d, 2012-Ohio-1289, at ¶ 143.

{¶36} Moreover, not only is *Belton* at least persuasive authority, there is other authority controlling the issue presented by this case. That is, we need not look beyond the Supreme Court of Ohio's application of *Apprendi* and *Ring* to Ohio's death-penalty statute. Indeed, the United States Supreme Court did not create a new standard in *Hurst* by which we are to judge the death penalty. *See Raglin v. Mitchell*, S.D. Ohio No. 1:00-CV-767, 2016 WL 4035185, *3 (July 28, 2016), fn. 2 ("the holding in *Hurst* is not a new 'substantive' rule"). Instead, the United States Supreme Court was applying the standard put forth in *Apprendi*, as applied to capital cases in *Ring*, to Florida's death-penalty statute in *Hurst*. *In re Bohannon v. State*, ___ So.3d ___, 2016 WL 5817692, *5 (Ala.2016) ("The United States Supreme Court's holding in *Hurst* was based on an application, not an expansion, of *Apprendi* and *Ring* * * *."); *Ex parte State*, ___ So.3d ___, 2016 WL 3364689 *6 (Ala.App.2016) ("The [United States Supreme] Court in *Hurst* did nothing more than apply its previous holdings in *Apprendi* and *Ring* to Florida's capital-sentencing scheme. The Court did not announce a new rule of constitutional law, nor did it expand its holdings in *Apprendi* and *Ring*."). Applying *Apprendi* and *Ring* to Ohio's death-penalty statute, the Supreme Court of Ohio did not reach the result that the trial court reached in this case. *See State v. Hoffner*, 102 Ohio St.3d

358, 2004-Ohio-3430, ¶ 68-70. *See also State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 269 (concluding that Ohio's death-penalty-sentencing phase does not invoke *Apprendi* because, under Ohio's statute, the trial court does not make factual findings that make a defendant death-eligible; rather, the jury does.)

{¶37} In *Hoffner*, the Supreme Court of Ohio held "that *Ring* has no possible relevance * * * to Ohio's death penalty statute." *Hoffner* at ¶ 69. *See also State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 221 (concluding that the jury's determination of a death-penalty specification beyond a reasonable doubt "does not run afoul of what *Ring* requires" and noting that the Court concluded in *Hoffner* that *Ring* "is not applicable to Ohio's capital-sentencing scheme"); *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, ¶ 5 (noting that the court concluded in *Hoffner* that *Ring* is "not applicable to Ohio's capital-sentencing scheme"), *abrogated on other grounds*, *Oregon v. Ice*, 555 U.S. 160, 164, 129 S.Ct. 711 (2009), citing *Hoffner* at ¶ 69-70. The Supreme Court of Ohio compared Arizona's death-penalty statute to Ohio's death-penalty statute:

Under the Arizona sentencing statutes proscribed in *Ring*, the trial court was solely responsible for making all factual determinations regarding whether a defendant should be sentenced to death. In contrast, Ohio's capital-sentencing scheme places that responsibility with the jury. R.C. 2929.03 charges the jury with determining, by

proof beyond a reasonable doubt, the existence of any statutory aggravating circumstances and whether those aggravating circumstances are sufficient to outweigh the defendant's mitigating evidence.

*Hoffner* at ¶ 69, citing R.C. 2929.03(B) and (D).

**{¶38}** Notwithstanding the trial court's departure from Ohio precedent, the trial court also ignored Sixth Amendment jurisprudence and wrongly extended the reach of the Sixth Amendment's right-to-a-trial-by-jury precedent. Going rogue, the trial court erroneously analyzed the concepts of death eligibility, Ohio's weighing process during the penalty phase, and advisory-sentence recommendations.

**{¶39}** First, the trial court misinterpreted the concept of "death eligibility." That is, the trial court considers a defendant to be death eligible only after the trial court sentences the defendant to death in its written opinion under R.C. 2929.03(F). The trial court's characterization of death eligibility ignores the distinction between whether a defendant is eligible for the death penalty and whether the death penalty is the appropriate sentence for a defendant who is already eligible for the death penalty. *See Ex Parte State*, 2016 WL 3364689, at *8 (discussing the distinction "between whether a capital defendant is *eligible* for the death penalty, and whether

the death penalty is an *appropriate* sentence for a capital defendant who *is* eligible for the death penalty"). (Emphasis sic.)

**{¶40}** The Supreme Court of Ohio clearly defined the concept of death eligibility. In Ohio, a defendant is eligible for a death sentence if a jury finds beyond a reasonable doubt that the defendant is guilty of one of the R.C. 2929.04(A) aggravating circumstances. *Belton*, ___ Ohio St.3d ___, 2016-Ohio-1589, at ¶ 59; *Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, at ¶ 269 ("Adams became death-eligible when the jury unanimously found him guilty of aggravated murder in the course of some predicate felony."); *State v. Davis*, 116 Ohio St. 3d 404, 2008-Ohio-2, ¶ 189; *State v. Gumm*, 73 Ohio St.3d 413, 417 (1995) ("At the point in time at which the factfinder (either a jury or three-judge panel) finds the defendant guilty of both aggravated murder and an R.C. 2929.04(A) specification, the defendant has become 'death-eligible,' and a second phase of the proceedings (the 'mitigation' or 'penalty' or 'sentencing' or 'selection' phase) begins * * *."), citing R.C. 2929.03(C)(2). The defendant in *Davis* argued "that the Sixth Amendment requires any finding of fact that makes a defendant eligible for the death penalty to be unanimously made by a jury" under *Apprendi* and *Ring*. *Davis* at ¶ 189. The Supreme Court of Ohio concluded that Davis's argument was meritless because "Davis's reliance on *Apprendi* and *Ring* is misplaced because the jury's verdict, and not the judge's findings, made Davis eligible for the death penalty." *Id.*

Accordingly, the trial court's conclusions about the concept of death eligibility in Ohio are erroneous.

**{¶41}** Also erroneous is the trial court's conclusion that Ohio's weighing process during the penalty phase is unconstitutional. *See U.S. v. Fields*, 483 F.3d 313, 346 (5th Cir.2007) ("Capital defendants have no constitutional right to a jury at sentencing."), citing *Proffitt v. Florida*, 428 U.S. 242, 253, 96 S.Ct. 2960 (1976); *Harris v. Alabama*, 513 U.S. 504, 517, 115 S.Ct. 1031 (1995), *overruled on other grounds*, *Alleyne v. United States*, ___ U.S. ___, 133 S.Ct. 2151, 2155 (2013). *See also Fields* at 346 ("Indeed, the Supreme Court has explicitly held that judges may do the weighing of aggravating and mitigating circumstances consistent with the Constitution."), citing *Clemons v. Mississippi*, 494 U.S. 738, 745, 110 S.Ct. 1441 (1990).

**{¶42}** As we noted above, *Hurst* did not expand *Apprendi* and *Ring*. Those cases "require only that the jury find the existence of the aggravating factor that makes a defendant eligible for the death penalty—the plain language in those cases requires nothing more and nothing less." *In re Bohannon*, 2016 WL 5817692, at *5. The *Apprendi* rule, as applied to death-penalty cases by *Ring*, "only prevents courts from using judicially found aggravating factors in its weighing process." Bentsen, *Beyond Statutory Elements: The Substantive Effects of the Right to a Jury Trial on Constitutionally Significant Facts*, 90 Va.L.Rev. 645, 677 (2004), fn. 166.

Because Ohio's death-penalty statute requires the jury, not the judge, to determine that an aggravating circumstance exists beyond a reasonable doubt, Ohio's death-penalty statute does not violate the Sixth Amendment. *Compare In re Bohannon* at *5 (applying *Apprendi*, *Ring*, and *Hurst* to Alabama's death-penalty statute and concluding that its statute does not violate the Sixth Amendment because the jury "determines by a unanimous verdict the critical finding that an aggravating circumstance exists beyond a reasonable doubt to make the defendant death-eligible").

**{¶43}** Furthermore, *Apprendi* and *Ring* do "not convert the judicial function of weighing aggravating and mitigating factors into a necessary factual determination that the aggravating factor(s) outweigh any mitigating factors." Bentsen at 677, fn. 166, citing *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954 (1978). "Whether the aggravating circumstances outweigh the mitigating circumstances is not a finding of fact necessary to make a capital defendant eligible for the death penalty but is a 'moral or legal judgment' guiding the trial court's discretion in determining '"whether a defendant eligible for the death penalty should in fact receive that sentence."'" *Ex parte State*, 2016 WL 3364689, at *8, quoting *Ex parte Waldrop*, 859 So.2d 1181, 1189 (Ala.2002), quoting *Tuilaepa v. California*, 512 U.S. 967, 972, 114 S.Ct. 2630 (1994). The weight afforded to the aggravating circumstance and mitigating factors "is one of judgment, of shades of

gray; like saying that Beethoven was a better composer than Brahms. Here, the judgment is moral * * *. What [a weighing statute] requires, is not a finding of fact, but a moral judgment." *U.S. v. Gabrion*, 719 F.3d 511, 532-533 (6th Cir.2013) (discussing the federal death penalty statute, which also requires a jury to weigh factors in determining whether a sentence of death is appropriate). *See also U.S. v. Sampson*, 486 F.3d 13, 32 (1st Cir.2007) ("As other courts have recognized, the requisite weighing constitutes a process, not a fact to be found. The outcome of the weighing process is not an objective truth that is susceptible to (further) proof by either party. Hence, the weighing of aggravators and mitigators does not need to be 'found.'"), citing *United States v. Purkey*, 428 F.3d 738, 750 (8th Cir.2005) (characterizing the weighing process as "the lens through which the jury must focus the facts that it has found" to reach its individualized determination), *Ford v. Strickland*, 696 F.2d 804, 818 (11th Cir.1983), and *Gray v. Lucas*, 685 F.2d 139, 140 (5th Cir.1982).

**{¶44}** In *Apprendi*, the United States Supreme Court discussed the role of mitigating evidence and noted the consideration of mitigating evidence

> neither expos[es] the defendant to a deprivation of liberty greater than authorized by the verdict according to statute, nor * * * impos[es] upon the defendant a greater stigma than accompanying the jury

verdict alone. Core concerns animating the jury and burden-of-proof requirements are thus absent from such a scheme.

*Appredni*, 530 U.S. at 490, fn. 16. Because mitigating factors are not facts that expose defendants to harsher penalties, there is no requirement that the jury unanimously find a mitigating factor. *See State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 259, citing *Mills v. Maryland*, 486 U.S. 367, 383, 108 S.Ct. 1860 (noting that the jury may not be instructed that it must unanimously agree on a mitigating factor before that factor may be weighed against an aggravating circumstance). *See also McKoy v. North Carolina*, 494 U.S. 433, 433-434, 11 S.Ct. 1227 (1990).

**{¶45}** *Hurst* did not disturb *Apprendi*'s holding that "trial courts may 'exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute.'" (Emphasis sic.) *In re Bohannon,* 2016 WL 5817692, at *6, quoting *Apprendi* at 481. *See also United States v. Sampson*, D.Mass No. 01-10384-LTS, 2016 WL 3102003, *3 (June 2, 2016) ("The Supreme Court, however, focused its analysis and its ultimate statements of the holding in *Hurst* on the first of those 'facts' – the finding of aggravating factors – and, besides quoting the statutory language, included no discussion of the second – the weighing of mitigating and aggravating factors."), citing *Hurst*, 136 S.Ct. at 620-624. Furthermore, "*Hurst* does

not address the process of weighing the aggravating and mitigating circumstances or suggest that the jury must conduct the weighing process to satisfy the Sixth Amendment." *In re Bohannon* at *6.

**{¶46}** In Ohio, there is no additional *finding*—within the meaning of the Sixth Amendment—not found by a jury that exposes a defendant to a harsher penalty. In Ohio, the only independent review done by the trial court is its reweighing of the aggravating circumstance and mitigating factors under R.C. 2929.03(F). The reweighing is not a "critical finding" that exposes the defendant to a harsher penalty. Indeed, notwithstanding the precedential-value issue of *Belton* discussed above, the Supreme Court of Ohio discussed that the weighing process for sentencing purposes is not subject to the Sixth Amendment because the weighing process cannot increase the potential penalty that the defendant faces. *See Belton*, ___ Ohio St.3d ___, 2016-Ohio-1581, at ¶ 60. Accordingly, the trial court's analysis regarding the constitutionality of Ohio's weighing process during the penalty phase is flawed.

**{¶47}** Finally, the trial court erroneously categorizes the jury's death recommendation in Ohio as "advisory." To reach this conclusion, the trial court ignores that the aggravating-circumstance finding in Ohio is made by the jury, not the judge. *Compare In re Bohannon* at *7 ("Bohannon ignores the fact that the finding required by *Hurst* to be made by the jury, i.e., the existence of the

aggravating factor that makes a defendant death-eligible, is indeed made by the jury, not the judge, in Alabama."). "Nothing in *Apprendi*, *Ring*, or *Hurst* suggests that, once the jury finds the existence of the aggravating circumstance that establishes the range of punishment to include death, the jury cannot make a recommendation for the judge to consider in determining the appropriate sentence or that the judge cannot evaluate the jury's sentencing recommendation to determine the appropriate sentence within the statutory range." *Id.* Unlike the jury's verdict in Florida, which was truly advisory because the jury did not make any findings regarding the aggravating circumstance, the jury's verdict in Ohio contains explicit findings as to the specific aggravating circumstance it found beyond a reasonable doubt. Therefore, the jury's death recommendation in Ohio is not advisory as was the jury's recommendation in Florida. *See id. Compare People v. Jackson*, 21 Cal.5th 269, 374, 205 Cal.Rptr.3d 386, 376 P.3d 528 (2016) (comparing California's death-penalty scheme to Florida's death-penalty scheme at issue in *Hurst* and concluding that California's does not violate the Sixth Amendment because, if the jury reaches a verdict of death, "[t]he trial court simply determines 'whether the jury's findings and verdicts that the aggravating circumstances outweigh the mitigating circumstances are contrary to law or the evidence presented'"), quoting Cal.Penal Code 190.4(e).

{¶48} For these reasons, we conclude that Ohio's death-penalty statute in effect in 1993 does not violate the Sixth Amendment. As such, the trial court erred in granting Mason's motion to dismiss the death-penalty specification from his indictment. The State's assignments of error are sustained.

{¶49} Having found error prejudicial to the appellant herein in the particulars assigned and argued, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**SHAW, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**