[Cite as *State v. Carter*, **2018-Ohio-645**.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-170231 |
| | | TRIAL NO. B-9202977 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| CEDRIC CARTER, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: February 21, 2018

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Ronald W. Springman,* Chief Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Timothy Young,* Ohio Public Defender*,* and *Richard A. Cline*, Senior Assistant Public Defender, for Defendant-Appellant.

**MILLER, Judge.**

{¶1}   Cedric Carter challenges the constitutionality of Ohio's death penalty statute arguing that imposition of the death penalty requires judicial fact finding in violation of his Sixth Amendment right to a jury trial as set forth in *Hurst v. Florida*, ___ U.S. ___ , 136 S.Ct. 616, 193 L.Ed.2d 504 (2016).  Carter is incorrect.

{¶2}   Carter was charged with aggravated murder and aggravated robbery for the 1992 robbery and shooting-death of a United Dairy Farmer clerk, Frances Messinger.  As required by the version of R.C. 2929.04(A) in effect in 1992, Carter's indictment included a death penalty specification—that Carter committed aggravated murder while he was committing, attempting to commit, or fleeing immediately after committing or attempting to commit the offense of aggravated robbery, and that he was the principal offender or, if not the principal offender, committed the aggravated murder with prior calculation or design.  *See* former R.C. 2929.04(A)(7).  Former R.C. 2929.04(A) required that the specification be "proved beyond a reasonable doubt."  And former R.C. 2929.03(B) required the trial court to instruct the jury that the specification had to be proven beyond a reasonable doubt.   The jury in this case was properly instructed.  The jury's verdict form indicated that the jury unanimously found Carter guilty of both charges and of the death penalty specification. Under former R.C. 2929.03(C)(1), Carter became death penalty eligible *only* after the jury found him guilty of the aggravating circumstances set forth in his indictment.

{¶3}   The case proceeded to the sentencing phase. Former R.C. 2929.03(D)(1) provided that, if the jury found the defendant guilty of an aggravating circumstance, the jury was required to "determine whether the aggravating circumstances the offender was found guilty of committing are sufficient to outweigh the mitigating factors present in the case."   Here, the jury unanimously found that

the state had proven beyond a reasonable doubt that the aggravating circumstances that it had found Carter guilty of were sufficient to outweigh the mitigating factors. The jury therefore recommended the death penalty to the trial judge under former R.C. 2929.03(D)(2). Had the jury not recommended the death penalty, that sentence would not have been available to the court. *See* former R.C. 2929.03(D)(2). The trial judge subsequently engaged in his own weighing process as set forth in former R.C. 2929.03(D)(3), and found "by proof beyond a reasonable doubt * * * that the aggravating circumstances which Defendant Cedric Carter was found guilty of committing did outweigh the mitigating factors in the case * * * ." Pursuant to former R.C. 2929.03(D)(3), the trial court imposed the death sentence.

{¶4} Carter contends that *Hurst*, __ U.S. __, 136 S.Ct. 616, 194 L.Ed.2d 504, requires us to vacate the trial court's sentence. It does not.

{¶5} In *Hurst*, the United States Supreme Court struck down Florida's death penalty statute on the ground that it required judicial fact finding before a defendant was death penalty eligible. The Court surmised that the Florida statute "does not require the jury to make the critical findings necessary to impose the death penalty. Rather, Florida requires a judge to find these facts." *Id.* at 622, citing former Fla.Stat. 921.141(3); *see Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (any fact that exposes a defendant to greater punishment is an element of the offense that must be submitted to the jury); *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) (a jury must find any fact necessary to impose the death penalty).

{¶6} The Ohio statute is different. In 1992, Ohio's death penalty statute required the aggravating circumstances, i.e., that which made Carter eligible for the death penalty, to be included in Carter's indictment and proven beyond a reasonable

3

doubt at trial. *See* former R.C. 2929.03(D). Carter's indictment complied with that provision. And the jury was properly instructed that the state had to prove the death penalty specification beyond a reasonable doubt. *See id.* The jury's verdict form separately stated the jury's finding as to the aggravating factors.

{¶7}   By contrast, under the former Florida statute, the maximum sentence a capital felon could receive on the basis of the jury's guilty verdict alone was life imprisonment. *Hurst* at 620, citing former Fla.Stat. 775.082(1). After a Florida defendant was found guilty, the court held an evidentiary hearing and the jury was required to issue an advisory sentence of life or death by majority vote only. *Id.*, citing former Fla.Stat. 921.141(1) and (2). The jury did not have to specify the factual basis for its recommendation. *Id.*, citing former Fla.Stat. 921.141(2). A Florida trial judge was free to impose a sentence of death even if the jury did not recommend it. *Id.* at 622. Additionally, the Florida statute required findings by the trial judge alone before the court could impose the death penalty. *Id.*

{¶8}   Post-*Hurst*, the Ohio Supreme Court recognized that, unlike the Florida statute, under Ohio law "the determination of guilt of an aggravating circumstance renders the defendant eligible for a capital sentence," and therefore "it is not possible to make a factual finding during sentencing phase that will expose a defendant to greater punishment." *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 59. In other words, in Ohio a jury must first find a defendant guilty of an aggravating factor before the death penalty becomes a possibility. While *Belton* involved the 2008 version of Ohio's death penalty statute, the relevant provisions are substantially similar to the ones under review today. The key point from *Belton* is that the sentencing phase under Ohio law involves a weighing—not a fact-finding—process. *Id.* at ¶ 60. The Ohio jury's role in the mitigation phase

4

affords an extra layer of protection to the accused. Without a jury recommendation that the defendant be sentenced to death, that sentence is unavailable. The Ohio judge's ability to reject a death sentence recommendation affords a safety valve and maintains a court's traditional role in imposing punishment. These layers of protection afforded a defendant comply with *Hurst. See State v. Jackson*, 8th Dist. Cuyahoga No. 105530, 2018-Ohio-276; *State v. Mason*, 3d Dist. Marion No. 9-16-34, 2016-Ohio-8400. Carter's sole assignment of error is overruled. The trial court's judgment is affirmed.

Judgment affirmed.

**MOCK, P.J.,** and **ZAYAS, J.,** concur.

Please note:
 The court has recorded its own entry on the date of the release of this opinion.